CLIFTON v. KROGER GROCERY & BAKING CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT — CERTIORARI—QUESTIONS REVIEWED.

On certiorari to review an award by the industrial accident board under the workmen's compensation act, the Supreme Court is limited to determining whether there is any competent evidence, direct or inferential, to support the findings and order of the board.

2. SAME—ACCIDENT ARISING OUT OF AND IN COURSE OF EMPLOYMENT.

Where plaintiff, manager of defendant's store, was instructed as part of his duty to take home with him each night for safe keeping all money taken in at the store after banking hours, and where, while so doing, he was struck by an automobile and injured, the accident arose out of and in the course of his employment, entitling him to compensation under the workmen's compensation act, and the fact that what he was doing would also further his own interests would not bar his recovery.

Certiorari to Industrial Accident Board. Submit-

On the question as to injuries arising out of and in the course of the employment within the meaning of the workmen's compensation act, see notes in L. R. A. 1916A, 40, 232; L. R. A. 1917D, 114; L. R. A. 1918F, 896.

ted October 6, 1921.    (Docket  No.  50.)      Decided
March 30, 1922.

Albert Clifton presented his claim for compensa-
tion against the Kroger Grocery & Baking Company
for an accidental injury in defendant's employ.   From
an order awarding compensation, defendant and the
Fidelity & Casualty Company of New York, insurer,
bring certiorari.    Affirmed.

*Cummins & Nichols,* for appellants.

*F. E. Rankin,* for appellee.

STEERE, J.   Plaintiff was manager of one of defend-
ant's numerous stores located in the city of Detroit.
He was injured on his way home after closing hours
on the evening of October 1, 1920.   His hours at the
store which he was managing were from 7 a. m. to
6:30 p. m.   When injured he had in his possession
about $332 of defendant's money taken in at the store
after banking hours which it was his duty to care
for.   Defendant kept no safe or other suitable pro-
vision for the safety of money in this or any of its
stores of like kind operated by a local manager.   Plain-
tiff was instructed by defendant's district manager, Mr.
White, to take charge at the close of the day of all
money, except change which he might secrete, that
had been taken in after banking hours, audit it, take
it home with him and care for it over night, verify it
in the morning and return it to the cash drawer in
the store, which he testified was the general custom
of defendant's store managers.   Plaintiff regularly
did so and the money he had with him when injured
was money received at the store after banking hours
that day.   On starting home he placed it in a little
five pound paper bag with a can of vegetables on top
of it for the purpose of concealment as the roll of

bills, mainly of small denominations, was too large for his pocket. The store was located at No. 2448 north side of Howard street and to go home, a distance of about two miles, he started directly to take his car on Michigan avenue, going on the same side as the store along Howard to Sixth street, where he turned northerly along the left side of Sixth street until he neared a large building in process of construction which he was accustomed to avoid because it was a convenient place for a hold-up, and then crossed to the other side of the street, proceeding along it northerly about a block to Michigan avenue, where he turned to his left and went along its south side, where there was less travel, to Brooklyn avenue and started to cross over Michigan to the safety zone to take a car which would carry him to his home on Merrick avenue. As he went out from the curb to cross he passed back of a parked car at his left and was struck by an automobile running easterly which knocked him down, inflicting serious injury which amongst other things resulted in the loss of an eye.

Defendant was operating under the employers' liability act and plaintiff made claim for compensation under that law, which was granted by the industrial accident board. The issue raised by defendants for review is whether the accident which caused his injuries arose out of and in the course of his employment. Broadly defined, it may be taken as authoritatively settled that "out of and in the course of his employment" covers those accidents which befall an employee while he is discharging some duty he is authorized or directed to perform for the furtherance, directly or indirectly, of his employer's business. It is undisputed that plaintiff suffered an accident on the occasion in question while regularly in defendant's service receiving a weekly salary as manager of one of its stores and that it befell him while performing

a duty he was specifically directed to perform in the furtherance of his employer's business, consisting of taking home with him and caring for money received at the store he was managing after banking hours. It is also undisputed that the accident befell him in the street after he had closed the store for the day and was on his way home for the night. The defense contends the latter facts preclude his recovery for the reason that "the trip he was taking was not taken because of his employment at all."

In support of this contention defendants' counsel invoke the general rule that the act does not apply to employees going to and from their day's work, and not in the immediate vicinity of their place of employment. This general rule has its full application to common laborers and other employees who work during stated hours at specified places, and when they are through for the day are free to go where they like and do as they please, with no further responsibility under their employment or duty to perform for their employers until working hours begin the next day or until they again resume their employment. If in the meantime they are accidentally injured while going somewhere or doing some act wholly for their own benefit they are not protected by the statute. But that rule does not necessarily apply where the injured employee is yet acting within the scope of his employment, carrying out the orders of his employer and performing some duty to further the latter's business. Where he was going or what he was doing might also further his own interests but it would not in itself bar him from recovery.

Under our statute findings of fact by the industrial accident board acting within its powers are, in the absence of fraud, made conclusive. This court is limited to determining whether there is any competent evi-

dence, direct or inferential, to support the findings and order of the board. In making this award the board found and held on the matters in controversy, in part as follows:

"We think the record supports the applicant's contention that the possession of the money made him apprehensive. That is borne out by his action in placing the money in a paper sack and camouflaging it with groceries; his action in crossing the street to avoid passing the building under construction; and in his action in asking for the sack containing the money upon recovering consciousness. There had been a number of robberies in that vicinity. The applicant contends further that he did not follow the course he would ordinarily have followed, had he not been in possession of the money. He testified that he would have proceeded along the north side of Michigan avenue, but that he avoided this side of the street because he daily carried money to the bank along that side of the street, and he was confident that a number of people along that side of the street knew that he carried a considerable amount of money.

"This applicant was paid a weekly wage, plus commissions. This arrangement takes him out of the usual hourly rate class and covered whatever service he performed for the respondent employer. The respondent employer undoubtedly considered the carrying home of the money as an important part of the applicant's duties, as he was specifically instructed on that point. * * *

"We find as a fact that at the time of the accident, the applicant was carrying out a specific order to perform a specific duty for the respondent employer, and we further find that because of the peculiar circumstances surrounding the case, the carrying out of this duty caused the applicant considerable apprehension. It is therefore found that the applicant suffered an accidental personal injury which arose out of and in the course of his employment with the respondent employer. It thus follows that the decision of the arbitration committee should be, and the same is, in all things affirmed."

That plaintiff was performing a daily duty imposed by distinct orders of his employer at the time and as required by the terms of employment is undisputed, and there is evidential support for the conclusion of the board that there were peculiar circumstances surrounding this case. This defendant grocery company had adopted the peculiar custom of converting its numerous store managers into perambulating safety deposit boxes charged with the duty of carrying through the streets of Detroit after closing hours a large amount of money instead of having safes or vaults or making other provision for the safety of money taken in at their stores after banking hours. The nature of their business was such that the bills averaged small denominations, requiring the money carrier to freight himself with a bulky roll of small bills on his way home through a city and at a time where and when the dangers of such a course were a matter of common knowledge. Plaintiff testified that during the short period he acted as manager there were two or three other managers in that district held up and money taken from them. Not only does he testify that there was absolutely no provision at his or any of the other stores for safely caring for the money during closing hours and he was distinctly instructed by his district manager to carry the money home and see that it was kept safely over night, but a witness named Hampton testified that he had worked for the Kroger company in various capacities from porter up to store manager and finally as district manager, and such were the customary instructions and practice; that when store manager he was so ordered by his district manager, and when he became district manager he, by direction of his superior, instructed the managers of the 21 stores in his district to take the money on hand home at night. If the duty imposed on the store manager was to carry the

money on hand at closing hours to a bank or some other depositary where it might be received, there would be little question but that any one of them who was injured in a street accident while on such mission would come under this act.

We think defendants beg the question in the assertion that carrying the money home was a mere incident of plaintiff's trip at which time his employer had no control over him but he was left free to go where he pleased, even to "have dined down town and then gone to the theater," that had he done so and "fallen down the theater stairs" he could with like force claim he violated no duty and "but for the money he would have taken another stairway." So far as the duties of his employment are concerned, it can as well be said that his going towards home was an incident of the performance of his unfinished daily duties. In *Punches* v. *American Box Board Co.*, 216 Mich. 342, the injured party was at the same time returning to work from his home and as a duty of his employment was taking a team of horses back to the factory for his employer. *Vide*, also, *Beaudry* v. *Watkins,* 191 Mich. 445 (L. R. A. 1916F, 576) ; *Kunze* v. *Detroit Shade Tree Co.*, 192 Mich. 435 (L. R. A. 1917A, 252).

The instant case was not a casual or unusual service incidentally performed for the employer's interest on the employee's initiative, but a regular, imperative, daily duty in direct obedience to the terms of plaintiff's hiring and in prompt compliance with a specific order to take the money home with him and there care for it. He had no orders or permission to carry the bulky roll with him while dining at some public place down town or when attending a theater. He yet had an important duty to perform in the course of his employment calculated to further his employer's business, and was engaged in performing it when injured.

Under the general rule relative to performing a service within the scope of his employment tending to further his employer's interests this case falls on the liability side of the line of demarcation so carefully pointed out with review of many authorities by Chief Justice FELLOWS in Sichterman v. Kent Storage Co., ante, 364.

The ultimate facts found by the board were not without evidential support.

The award is affirmed.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.

The late Justice STONE took no part in this decision.