MURPHY *v.* BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF THE CITY OF FLINT.

1. WORKMEN'S COMPENSATION—INJURY ARISING OUT OF AND IN COURSE OF EMPLOYMENT—RECORD.

The determination as to whether or not an injury to an employee arose "out of and in the course of" employment necessarily rests on the particular facts and circumstances disclosed by the record of the case (2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943).

2. SAME—PROXIMATE CAUSE.

An injury arises "out of" the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury (2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943).

3. SAME—PROXIMATE CAUSE—DISASSOCIATED RISKS.

To arise "out of" the employment the injury sustained must have a causal connection with the work to be performed; must be one which follows as a natural incident to the employment, be connected with it, and not the result of a risk disassociated therefrom (2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943).

4. Same—In Course of Employment.

An injury is received ''in the course of'' employment, as that term is used in the workmen's compensation act, when it comes while the workman is doing the duty which he is employed to perform (2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943).

5. Same—Proximate Cause—Equal Exposure to Hazard Apart from Employment.

Under the test that an injury, to be compensable under the workmen's compensation act, must have arisen out of and in the course of the employment, an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment would not be compensable (2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943).

6. Same—Proximate Cause—Foreseeability.

An injury to an employee to be compensable under the workmen's compensation act need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

7. Same—Schoolteacher En Route to Rooming Place—Fractured Ankle.

Teacher who suffered a fractured ankle on public street en route from schoolhouse to rooming place where she intended to prepare examination questions for use during the next week and to examine class papers *held*, not to have suffered a compensable injury as she was not at the time thereof engaged in the performance of a specific duty at school principal's direction or request and it was not incumbent upon her to go directly to her rooming place if she had occasion or desire to go elsewhere although it does appear that school room where plaintiff would have done the work was being otherwise used by a musical organization and that plaintiff and other public school teachers have found it necessary to do home work in order to perform teaching duties properly.

8. Same—Fractured Ankle—Street Travel—Schoolteacher—Proximate Cause.

Where the risks incident to street travel did not arise in the course of a schoolteacher's employment under her contract, there was no causal connection between the fracture of her ankle en route from school house to rooming place and the

work she was required to do; hence the injury was not a compensable one under the workmen's compensation act (2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943).

Appeal from Department of Labor and Industry. Submitted January 10, 1946. (Docket No. 52, Calendar No. 43,214.) Decided April 1, 1946.

Edna V. Murphy presented her claim for compensation against Board of Education of the School District of the City of Flint, employer, for injuries sustained while on her way home. Award to plaintiff. Defendant appeals. Reversed.

*H. H. Warner*, for plaintiff.

*Guy W. Selby*, for defendant.

Carr, J. Defendant appeals from an order of the department of labor and industry, awarding compensation to plaintiff because of an injury sustained by her, January 15, 1945, while on a public street. The material facts are not in dispute. At the time of the injury plaintiff was employed by defendant, on a monthly salary, as a teacher in the technical high school in Flint. Her class work on the day in question was completed at 3 o'clock in the afternoon. The room to which she had been assigned was used after regular school hours by a musical organization and it was, in consequence, impossible for plaintiff to continue her work there. It is her claim that she had certain class papers to examine and that she also wished to prepare examination questions for use the following week. The principal of the school testified that if plaintiff had appealed to him he would have found a place within the school building where she might have continued her work. How-

ever, she did not consult him and, not knowing of any place that was available for her use, left the school building, shortly after 3:30, for her rooming place some three blocks away. She carried the class papers referred to and also two small shorthand textbooks, which she intended to use in preparing examination questions. On the way home, and about two blocks from the school, she sustained the injury in question, a fractured ankle. No claim is made that the fact that she was carrying the books and papers referred to contributed in any way to the injury she suffered.

On behalf of plaintiff it is claimed, in substance, that the proper performance of her duties as a teacher required her to do work at home, or at least outside of the school building where she was regularly employed. Plaintiff testified on the hearing before the deputy commissioner that the building in which she worked was regularly locked by the janitor at 4:30 in the afternoon, but that teachers remaining there after that hour could get out of the building prior to 5 o'clock on request to an office employee. Plaintiff claims, however, that had she remained in the building as long as possible she would not have had sufficient time to do the work that she wished to do. The record justifies the conclusion that many teachers engaged in public school work prepare work, when necessary, outside of the school in which they are employed, and the testimony of the principal of plaintiff's school indicates that he expected his teachers, including plaintiff, to be prepared, and to do home work if such was required for proper performance of teaching duties.

The question presented is whether the injury suffered by plaintiff arose "out of and in the course of" her employment. (2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943 [Comp.

Laws Supp. 1945, § 8417, Stat. Ann. 1945 Cum. Supp. § 17.151]). The determination of such question necessarily rests on the particular facts and circumstances disclosed by the record. *Amicucci* v. *Ford Motor Co.*, 308 Mich. 151; *Rector* v. *Ragnar-Benson, Inc.*, 313 Mich. 277. This court has, however, in the decision of cases involving the interpretation of the language of the statute above quoted, recognized and applied certain general principles. Thus in *Buvia* v. *Oscar Daniels Co.*, 203 Mich. 73 (7 A. L. R. 1301), in setting aside an award of the department of labor and industry in favor of the plaintiff, it was said:

"We have frequently held that, in order to entitle the injured person to compensation under the act, the injury must arise out of the employment as well as in the course of the employment. *Tarpper* v. *Weston-Mott Co.*, 200 Mich. 275 (L. R. A. 1918E, 507), and cases cited. An injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. *McNicol's Case*, 215 Mass. 497 (102 N. E. 697, L. R. A. 1916A, 306). The injury must be the result of one of the risks incident to the employment."

In *Meehan* v. *Marion Manor Apartments*, 305 Mich. 262, Justice CHANDLER, speaking for the court, stated the issue involved in the following language:

"The only question presented by the appeal is whether the accident resulting in death arose 'out of' deceased's employment as required by 2 Comp. Laws 1929, § 8417 (Stat. Ann. § 17.151). An accident to be compensable, must be one arising 'out of' as well as 'in the course of' the employment. *Appleford* v. *Kimmel*, 297 Mich. 8. To arise 'out of' the

employment the injury sustained must have a causal connection with the work to be performed; it must be one which follows as a natural incident to the employment, be connected with it, and not the result of a risk disassociated therefrom. See *Appleford* v. *Kimmel, supra; Dent* v. *Ford Motor Co.,* 275 Mich. 39; *Rucker* v. *Michigan Smelting & Refining Co.,* 300 Mich. 668.''

In *Appleford* v. *Kimmel,* 297 Mich. 8, the following language from *McNicol's Case,* 215 Mass. 497 (102 N. E. 697, L. R. A. 1916A, 306), was quoted with approval:

'' 'It is sufficient to say that an injury is received ''in the course of'' the employment when it comes while the workman is doing the duty which he is employed to perform. It ''arises out of'' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed, and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises ''out of'' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' ''

On behalf of defendant it is insisted that there was no "causal connection" between plaintiff's injury and her employment. It is contended that, at the time of the accident, plaintiff was not engaged in performing any specific duty for her employer, that she had left the school building to which she had been assigned, and was on her way home for the night in accordance with her customary practice. Reliance is placed on the general rule, as stated in the cases above cited, and also on the opinion of Justice WIEST in *Olree* v. *White Star Refining Co.*, 252 Mich. 33. In holding that the order of the department of labor and industry, denying compensation to the plaintiff, should be affirmed, it was said:

"Plaintiff's work for the day was done, except making up time sheets at his convenience at home or elsewhere. He did not have to go home to make up the time sheets. He was returning to his home for his own purposes of the night, like any other worker at the close of day. His employment did not expose him to the risk of being struck by a train, but his desire to spend the night at home and his travel in order to do so did. If such an accident is to be held to arise out of and in the course of employment it will have to be so provided by legislation."

Counsel for plaintiff insists that the record supports the award as made by the department and contends, in substance, that her purpose in going from the school to her rooming place was the continuance of her work as a teacher in defendant's employ, and that she assumed the risks of street travel merely as an incident of the work that she was required to do under her contract. On this premise it is contended that the injury should be regarded as one arising out of and in the course of the employment. In support of this contention reliance is placed on *Kunze* v. *Detroit Shade Tree Co.*, 192 Mich. 435 (L.

R. A. 1917 A, 252).   There the employee was en-
gaged in trimming and planting trees for defendant,
and sustained a fatal injury in an automobile acci-
dent while traveling on a public street from one
place to another in the regular performance of his
duties.   It was held that the character of his work
was such as to compel him to go from place to place
and to assume the risks of street traffic.   The acci-
dent occurred in the course of the performance of
plaintiff's duties in the usual manner.

Plaintiff also relies on *Clifton* v. *Kroger Grocery
& Baking Co.*, 217 Mich. 462, cited by the depart-
ment of labor and industry in support of its con-
clusion.   In that case the plaintiff was employed
as store manager for defendant and the proofs
established that it was one of his duties to take
home with him each night after closing hours, and
safeguard, the money taken in at the store after the
banks were closed.   Plaintiff further testified that
in two or three instances managers of other stores
in the district had been robbed while transporting
defendant's money to their respective homes in ac-
cordance with defendant's instructions and that he
was apprehensive of a like experience.   Accordingly,
in selecting his route from the store to a point where
he expected to board a street car he did not follow
a direct course but sought to avoid, by crossing the
street, a certain place that he thought might be con-
venient for a holdup.   While following such course
he sustained the injury for which he sought com-
pensation.   At the time of the accident he was en-
gaged in performing a specific duty for his em-
ployer, namely, the transporting and safeguarding
of his employer's money.   In sustaining an award in
his favor it was said (p. 468):

"The instant case was not a casual or unusual
service incidentally performed for the employer's
interest on the employee's initiative, but a regular,

imperative, daily duty in direct obedience to the terms of plaintiff's hiring and in prompt compliance with a specific order to take the money home with him and there care for it. He had no orders or permission to carry the bulky roll with him while dining at some public place down town or when attending a theater. He yet had an important duty to perform in the course of his employment, calculated to further his employer's business, and was engaged in performing it when injured."

In the case at bar plaintiff, at the time she received her injury, was not engaged in performing any specific duty for defendant, at defendant's direction or request. It was not incumbent on her to go directly to her rooming place if she had occasion or desire to go elsewhere. She was not charged with the duty of transporting or safeguarding property of the employer. It should be noted, also, that the accident happened on Monday; that the examinations, for which plaintiff wished to prepare questions, did not begin until the following week, and there is no showing in the record that the preparation of such questions on the day of the injury was necessary. Neither was there any showing as to urgency in connection with the reading of the class papers referred to, nor as to the length of time reasonably required therefor.

In *Stockley* v. *School District No. 1 of Portage Twp.*, 231 Mich. 523, 531 (24 N. C. C. A. 170), a teacher in the employ of defendant sustained a fatal injury while traveling to attend an institute in a neighboring city, at the direction of the superintendent of schools. In upholding an award of compensation the court, as in *Clifton* v. *Kroger Grocery & Baking Co.*, *supra*, emphasized the fact that at the time of her injury plaintiff was engaged in the per-

formance of a specific duty required of her. Commenting on the situation, it was said:

"She was not going to or returning from her customary place of employment before or after working hours, but by authority of her employer was going away from her home and place of regular employment on a journey of 12 miles or more, made subject thereby to the hazards of travel, not free to go where she pleased at her own convenience or pleasure, but to a specified place on a special mission in the line of her employment. The criterion is not necessarily that others are exposed to the same dangers of travel, but whether with reference to the nature of his employment the performance of a special service within the scope of such employment, in the interest of or by direction of his employer, particularly subjects an employee to the added danger out of which the accident arises."

So, in *Morse* v. *Port Huron Railroad Co.,* 251 Mich. 309, the employee was injured while taking his employer's money to the bank for deposit on a Saturday night after ordinary working hours. The testimony was held to justify a finding that such practice was customarily followed, the court saying in this respect:

"The custom justified the inference that the deposit on Saturday night was a prescribed duty."

It was, accordingly, held that the accident arose in the course of, and out of, the employment.

In *Mann* v. *Board of Education of City of Detroit,* 266 Mich. 271, the employee, the principal of a high school in the city of Detroit, was killed in a highway accident while going to Ann Arbor to confer with freshmen at the university who had graduated from the school of which Mr. Mann was principal. Such trip had the approval of the superintendent of

schools although the principal was not required to make it. The record in the case discloses that each high school principal could assume the duty if he thought that he should do so. The employee determined that he should make the trip. It was held that the injury, occurring in the performance of such duty, arose out of and in the course of the employment. There, as in the other cases of similar character above referred to, the injury resulted from hazards incident to the performance of a special duty in the line of employment.

The question here involved has arisen in other states under statutes containing provisions identical, or substantially so, with the above-quoted provision of the Michigan act. In certain cases the factual situation presented is much more analogous to that involved in the case at bar than in any of the Michigan decisions above cited.

In *Inglish* v. *Industrial Commission of Ohio,* 125 Ohio St. 494 (182 N. E. 31, 83 A. L. R. 210), a teacher in a school was walking home at night, carrying examination papers that he expected to grade at home. The proofs indicated that it was necessary for him to do this because of lack of time and also lack of lighting facilities at the school. He was struck by an automobile and fatally injured. It was held that the accident arose out of and in the course of the employment. However, the decision was expressly overruled by the Ohio court in the later case of *Industrial Commission of Ohio* v. *Gintert,* 128 Ohio St. 129 (190 N. E. 400, 92 A. L. R. 1032). There a teacher was killed in an automobile accident on a public street while traveling from her home to the school in which she was regularly employed. Based on the fact that she did certain preparatory work at home, it was claimed that the injury was compensable. The same claim was ad-

vanced, in substance, as is urged on behalf of plaintiff in the case at bar. The following quotation from the opinion indicates the situation in this regard:

"There was testimony that teachers are required to be prepared for their work, and that preparation cannot be fully made during school hours; that 'it would be necessary to do outside work,' and that decedent did do some work 'outside of school hours.' This was the testimony of the superintendent of schools, who further stated: 'Some of the teachers do that work at the building, some of them 'do it before school in the morning by coming early, some of them do it after school by remaining, some take it home and some make a combination of both and all methods, but with reference to the instructions of how it is done, that is left to their own convenience.' The superintendent further testified that he never issued any instructions to the decedent to do any of her preparation work at home."

In reversing an award of compensation made by the lower court it was said, following some discussion as to the underlying principle of the Ohio act:

"Let us apply this principle to the facts in the instant case. The decedent's place of employment was the Francis Willard school building in Warren. It is not claimed that the board of education had any duty to perform with reference to her transportation; or that her injury was occasioned while she was in the actual discharge of any duty under her contract of employment. The claim is based entirely upon the theory that while at her home she did some work in preparation for her school duties and that therefore she was in the course of her employment not only while in the school building, but while traveling from the school to her home, and while in her own home, and also while en route back to school. It would follow from an application of

that theory that the workmen's compensation fund
would become a general insurance fund covering ac-
cidental injury or death of such employee, what-
ever the cause, and wherever and whenever it may
have occurred. Payment would thus be required in
this case had the injury been caused by a fall, or
otherwise, in the decedent's own home.

"Let us again apply the test of hazard of employ-
ment, and inquire whether the injury was sustained
in the course of or arose out of the employment. It
is not contended, and cannot be, that the decedent
sustained any injury as a result of any risk or haz-
ard of the employment itself, or that the fatal in-
jury was occasioned in the course of or arose out of
the employment. It was not caused by any equip-
ment, tools or material in any wise connected with
her employment, and the employment had no causal
connection with the injury either through its ac-
tivities, its conditions or its environments. In this
respect this case differs essentially from cases cited
and relied upon by defendant in error. If there can
be a recovery under the facts in this record, then
there could be a like recovery in the case of any
clerk, stenographer, bookkeeper, or of any other em-
ployee employed in an office, bank, store, factory, or
other place of employment, who carried home any
books, papers, statements, et cetera, for any pur-
pose at all connected with his duties, and sustained
an injury while absent from the place of employ-
ment and while engaged in some act not in any wise
connected with the duties of the employment. That
would disregard entirely the test of the right to
such award, which is whether the employment had
some causal connection with the injury."

In *Wimmer* v. *Upper Saucon Township School
Dist.*, 116 Pa. Sup. 553 (176 Atl. 840), a public school
teacher was injured in a street accident while driv-
ing from his home to the building where he was cus-
tomarily employed. He sought compensation under

the statute, claiming that the accident arose in the course of his employment. He claimed that it was his duty to supervise the conduct of children going to and from school. Commenting on such claim, it was said:

"It does not follow that the teacher, immediately upon leaving his home or coming into the area travelled by pupils of his, was required immediately to patrol or police the district in order to supervise his pupils. He was not actually engaged in the course of his employment until the occasion arose for such supervision and he undertook to so act. There was not any evidence that at the time of the accident the teacher had arrived at a point which was within the area travelled by his pupils."

The case of *Industrial Commission of Ohio* v. *Gintert, supra,* was cited with approval in *Jellico Grocery Co.* v. *Hendrickson,* 172 Tenn. 148 (110 S. W. [2d] 333). There the employee, a grocery salesman, fell on the front steps of his home. He had taken certain orders during the day which, in accordance with instructions given him by his employer, he intended to have written up in his home that evening by a member of his family. In holding that the injury was not compensable it was said:

"We think it perfectly evident that petitioner would have gone home on the day in question, regardless of whether he had taken any orders during the day or not. His going home was not in the course of his employment by defendant, but was in the course of his obligation and duty to return to his home and family for the night. It is true that he also had the intention of having his wife or son write up the orders, but his presence on the steps had relation to his return to his family and home."

Of like import is *Vitagraph, Inc.,* v. *Industrial Commission of Utah,* 96 Utah, 190 (85 Pac. [2d]

601). There an employee sought compensation for
an injury received in a street accident while going
to his home. It was a part of his duty, under his
contract of employment, to prepare certain reports
and he claimed that he customarily did so at his
home because the employer provided no definite
place for the doing of such work, and that he in-
tended to prepare the reports after reaching his
home on the day the accident occurred. In holding
that the accident did not arise out of or in the course
of his employment within the meaning of the Utah
statute, the court said (p. 200):

"Of course, as is customary with most employees,
he was required to go from his home to his work and
return therefrom to his home, not by any command,
order or requirement of the employer but from per-
sonal reasons and necessities. Going to the theater
from his home and returning home from the theater
were matters that were within his own control and
convenience as to time, place, or manner, road, di-
rection or means of conveyance. On those matters
he exercised his own judgment and pleasure. He
undoubtedly intended to tabulate his report to his
employer at his home, but that was for his personal
convenience and the place of his own choosing. Had
he tabulated the report at the theater as he some-
times did at other theaters he would still have the
trip to his home just the same. In going to his home
he was not on a mission or errand for his employer,
nor was he performing a duty for his employer. He
was not ordered, required or requested to make the
trip by the employer nor was it necessary that he go
to his home to make his report. He was not follow-
ing instructions of his employer nor under any su-
pervision or control of the employer. The fact that
he may or actually contemplated doing the work of
tabulating his report after arrival at his home was
merely incidental to the cause and purpose motivat-
ing him in making the trip to his home. The tabu-
lating of his report was not the motive actuating

the journey; it was not a major purpose of the trip nor was it a substantial reason for the trip being undertaken. If the report was never to have been made while home, he would still have gone there as he did."

In view of the fact that the plaintiff in the case before us was going from her usual place of employment to her home, which she must necessarily have done on the day the accident happened without reference to her intention to do certain work there in preparation for her teaching duties, the decision of the New York court of appeals, in *Matter of Claim of Dependents of Marks* v. *Gray,* 251 N. Y. 90 (167 N. E. 181), is in point. There the injured employee intended to go to another town for personal reasons. His employer requested that he take with him certain tools and perform plumbing work in the town of his destination. He was injured in an automobile accident while making the trip. It was held that the injury sustained was not one "arising out of and in the course of his employment." Chief Justice Cardozo, in rendering the opinion of the court, said:

"What concerns us here is whether the risks of travel are also risks of the employment. In that view the decisive test must be whether it is the employment or something else that has sent the traveler forth upon the journey or brought exposure to its perils."

Applying general principles, recognized in the decisions of this court above referred to, and likewise in the cases cited from other States, can it be said on the basis of the testimony in the record that plaintiff's injury arose out of and in the course of her employment? We think not. It is apparent that on the completion of her duties in the school building, which was the regular and ordinary place of her employment, she would have gone to her

home as a matter of course and without reference to her intention to do work there in preparation for her further teaching duties. The situation would have been precisely the same, insofar as incurring the hazards of street travel were concerned, if she had fully completed her work before leaving the school. She was not at the time of injury engaged in any specific mission for her employer. The risks incident to street travel did not arise in the course of her employment under her contract; nor was there any "causal connection" between the unfortunate injury that she sustained and the work that she was required to do.

The order of the department of labor and industry awarding compensation to plaintiff is set aside, with costs to appellant.

Butzel, C. J., and Bushnell, Sharpe, Boyles, Reid, North, and Starr, JJ., concurred.