PHILLIPS *v.* FITZHUGH MOTOR COMPANY.

WORKMEN'S COMPENSATION—EMPLOYEE EN ROUTE HOME—ARISING OUT OF OR IN COURSE OF EMPLOYMENT.

Widow and dependents of sales and parts department manager of defendant automobile sales agency were not entitled to workmen's compensation for his death where fatal injuries were sustained in automobile accident on public highway while en route home at 12:30 in the morning in employer's car after having worked on a prospective customer list in the evening at the special request of the owner, since the fatal injuries did not arise out of or in the course of the employment (CL 1948, § 412.1).

BUSHNELL and SHARPE, JJ., dissenting.

Appeal from Workmen's Compensation Commission. Submitted January 4, 1951. (Docket No. 48, Calendar No. 44,831.) Decided April 3, 1951. Rehearing denied May 14, 1951.

Jean Phillips presented her claim against Fitzhugh Motor Company, employer, and Michigan Mutual Liability Company, insurer, for compensation for death of husband while in defendant's employ. Award to plaintiff. Defendants appeal. Reversed and remanded.

*McGinty & Bielawski* (*Warner & Hart,* of counsel), for plaintiff.

*L. J. Carey* and *Geo. J. Cooper,* for defendants.

SHARPE, J. (*dissenting*). This is an appeal by de-

fendants in a compensation case in which an award was made to plaintiffs who are the widow and 2 minor children of the deceased employee.

Deceased, Roy Phillips, started work for the Fitzhugh Motor Company as sales manager in January, 1946. After the shortage of new cars developed, he was asked to operate the parts department, but when new cars were available, deceased was again made sales manager. At the time of Mr. Phillips' injury and death, he was not only sales manager, but also manager of the parts department and in charge of used cars. He had no regular working hours and received a weekly wage of $65. In addition to his salary and bonus, deceased was furnished a company car which carried a dealer's license plate.

The compensation commission found as a fact:

"In his capacity as sales manager, Mr. Phillips had a list of defendant's customers who had ordered but had not as yet received new cars. Mr. Walter D. Fitzhugh, the owner of the Fitzhugh Motor Company, had been sick and away from his business for a period of time so was not familiar with the list of prospective new car purchasers. On June 9, 1949, he advised the deceased to clarify the list so it could be readily determined who the customers were that had ordered new automobiles and made a deposit but had not received automobiles. Mr. Fitzhugh wanted to have it in such shape that he could understand it in the event something happened to the deceased. The deceased told him that he would go down that evening and get started on the revision of the list. The deceased also arranged with George Nash, a mechanic, to do some work on the seats of a used car which was for sale. On the night of June 9th the deceased, driving the company car, picked up Mr. Nash at his home and drove to the defendant company's garage. Nash worked on the car seats and the deceased worked on the car list. The 2 men quit work at about 12 o'clock midnight. The deceased

drove Nash home. After leaving Nash at his home, the deceased while driving on State street in Bay City, on the route he would take to his home, was involved in the automobile accident which resulted in his death. The accident occurred at about 12:30 in the morning of June 10, 1949."

The compensation commission awarded plaintiffs compensation at the rate of $23 per week and $628 for the expenses of deceased's last illness and burial. Upon leave being granted, defendants appeal and urge that the commission erred as a matter of law by holding that the fatal injury to deceased on a public highway, while on his way home from work, arose out of and in the course of his employment.

It is the accepted rule that in order to entitle the injured person to compensation under the act, the injury must arise out of the employment and in the course of the employment.

In *Murphy* v. *Board of Education of the School District of the City of Flint,* 314 Mich 226, we quoted with approval from *Meehan* v. *Marion Manor Apartments,* 305 Mich 262, where Justice Chandler, speaking for the Court, stated the issue involved in the following language:

"The only question presented by the appeal is whether the accident resulting in death arose 'out of' deceased's employment as required by CL 1929, § 8417* (Stat Ann § 17.151). An accident, to be compensable, must be one arising 'out of' as well as 'in the course of' the employment. *Appleford* v. *Kimmel,* 297 Mich 8. To arise 'out of' the employment the injury sustained must have a causal connection with the work to be performed; it must be one which follows as a natural incident to the employment, be connected with it, and not the result of a risk disassociated therefrom. See *Appleford* v. *Kimmel,*

---

* As amended by PA 1943, No 245 (CL 1948, § 412.1 [Stat Ann 1949 Cum Supp § 17.151]).—Reporter.

*supra; Dent* v. *Ford Motor Co.,* 275 Mich 39; *Rucker* v. *Michigan Smelting & Refining Co.,* 300 Mich 668."

It is the rule that ordinarily injuries to an employee while going to or from work are not regarded as arising out of and in the course of his employment so as to bring him within the provisions of the act. For cases in this group see: *Hopkins* v. *Michigan Sugar Co.,* 184 Mich 87 (LRA1916A 310); *Lipinski* v. *Sutton Sales Co.,* 220 Mich 647; *Dent* v. *Ford Motor Co.,* 275 Mich 39; *Shane* v. *Alexander,* 277 Mich 85; *Furino* v. *City of Lansing,* 293 Mich 211; *Simpson* v. *Lee & Cady,* 294 Mich 460; *Murphy* v. *Board of Education of the School District of City of Flint,* 314 Mich 226; *Haggar* v. *Tanis,* 320 Mich 295; *State Treasurer* v. *Kaiser-Frazer Corp.,* 326 Mich 715; *Stocker* v. *Southfield Co.,* 244 Mich 13; *Hills* v. *Blair,* 182 Mich 20 (7 NCCA 409); *Reed* v. *Bliss & Van Auken Lumber Co.,* 225 Mich 164; *Pearce* v. *Michigan Home & Training School,* 231 Mich 536; *Otto* v. *Chapin,* 243 Mich 256; *Daniel* v. *Murray Corporation of America,* 326 Mich 1.

It is also the rule that in cases where the contract of employment includes conveyance of the employee to or from his place of work, an accident arising out of such transportation and resulting in an injury to the employee is compensable. See *Konopka* v. *Jackson County Road Commission,* 270 Mich 174 (97 ALR 552); *Chrysler* v. *Blue Arrow Transport Lines,* 295 Mich 606.

No hard and fast rule can be laid down to cover all situations, but as a general rule, employees who suffer injuries in going to or returning from their place of work are excluded from the benefits of the act, but there are exceptions to this rule. An exception to the above rule is found in cases where the employee is on his way home after performing or on the way home to perform some special service or to

discharge some duty incidental to the nature of his employment or in the interest of or under the direction of his employer. In such cases, an injury arising en route from the home to the place where the work is to be performed or from the place of performance of the work to the home is considered as arising out of and in the course of his employment. ·

In *Favorite* v. *Kalamazoo State Hospital,* 238 Mich 566, plaintiff was employed by defendant hospital as a nurse with regular hours of work from 8 a.m., to 8 p.m., but subject to call at any time and could not absent herself from the grounds after 10:30 p.m., without permission. She and other nurses lived in a dwelling on the hospital grounds about 20 rods from the building where she worked. After quitting work at 8 p.m., on the day in question she started to go to her room and in so doing slipped on an icy sidewalk connecting the hospital and the dwelling. We there said:

"The nurses' home on the hospital grounds was provided as a place in which these employees should live. It is apparent that one of the purposes of maintaining it was to secure the proximity of the nurses to the building in which those under their care were kept, so that they might quickly respond to a call at other than their regular hours of work. It was for this reason that their contracts of employment required them to remain at the home during certain hours when off duty. It seems clear that, while going to and returning from the home, plaintiff was in the ambit of her employment."

In *Reisinger-Siehler Co.* v. *Perry,* 165 Md 191 (167 A 51), one Perry was employed to look after the building of his employer. His regular hours of employment were from 6 a.m., to 6 p.m., but he was subject to call at any time. On the day in question, Perry by permission of his employer stopped work at 4:30 p.m., to make a social call. He returned home

about 11:30 p.m., and was told by neighbors that a policeman wanted to see him concerning the store. He went to the store where he found the lights on and the back door open. He locked up the store and while on his way home was injured while crossing a street. The State industrial accident commission awarded Perry compensation. Upon appeal, the court of appeals said:

"The record does not disclose any express agreement between him and his employer relative to the duties that he was to perform, or the remuneration he was to receive. Under his regular employment, his duties were to remain at the store during the day; but, in addition to this, he was, as we have said, when at home, subject to further duties when called upon. The times when these duties were to be performed were uncertain, as he was to go to the store only when unusual conditions existed there. What he was to do and the length of time he was to remain there were equally uncertain. It was possible that when called from his home and possibly from his bed, at night, the work he found necessary to be done upon reaching the store would require his presence for but a few minutes, and it could hardly be said that this employment, for which he was to be remunerated, would cover only the period for which he was actually at work in or about the store. The work that he was called upon to do under these circumstances differs greatly from the regular employment of one employed at regular hours at a given place, and who at the expiration of the period of his work is free to serve himself as he pleases.

"There was, we think, an implied agreement from the nature and character of the employment of the claimant in the performance of the additional duties that his employment was not to be restricted to the time in which he was at work at the store on such occasions. It was in the nature of an errand or mission on behalf of his employer, and when so treated his employment commenced at the time when

he left his home to go to the store, and ended when he returned to his home."

In *Kyle* v. *Greene High School,* 208 Iowa 1037 (226 NW 71), deceased was in the employ of defendant as a janitor. He had no regular working hours. He usually went to work at 5 a.m., would do some work and return at 3:30 p.m., and if he did not complete his work would return in the evening. On the evening in question he had completed his labor for the day and returned to his home. About 7 p.m., the school principal called him to come to the school as she was unable to manipulate the lights. On his way to the school, deceased was injured and died a few weeks later. Plaintiff, widow of deceased, was awarded compensation and on appeal, the supreme court affirmed a judgment for compensation and said:

"In the instant case, an emergency with reference to the lights had arisen at the schoolhouse. The janitor had completed his services for the day. In response to the call, he started in the performance of a special service or errand which was incidental to the nature of his employment and in the interest of his employer. He, as the employee, had the right to comply with the request for the special service. His going to perform the service was not personal to himself, but was incidental to his employment and in the interest of his employer."

See, also, *Morey* v. *City of Battle Creek,* 229 Mich 650 (38 ALR 1039); *Kunze* v. *Detroit Shade Tree Co.,* 192 Mich 435 (LRA1917A 252); *Clifton* v. *Kroger Grocery & Baking Co.,* 217 Mich 462.

Plaintiffs rely upon the doctrine announced in *Stockley* v. *School District No. 1 of Portage Township,* 231 Mich 523 (24 NCCA 170), where a teacher was killed when her car collided with an interurban electric car. She was on her way to attend a teach-

ers' institute at the direction of her employer. In affirming an award for compensation, we said:

"It is also contended that even if in the course of her employment deceased's injury did not arise out of it because she had not arrived at, but was only on her way to, the place of holding the institute, in support of which counsel cites decisions to the generally accepted rule that when an employee is injured away from his place of employment and employer's premises while going to or returning from his work the injury does not arise out of his employment. Various exceptions to that general rule are found, in cases where it is made to appear that the employee although away from his regular place of employment, even before or after customary working hours, was doing some special service or discharging some duty incidental to the nature of his employment in the interest of or under the direction of his employer. Deceased's regular employment, for which she primarily hired, was teaching in the high school of Houghton on her employer's premises, not far from her home. Attending this legally-appointed teachers' institute when directed to do so by the superintendent of schools, while within the scope of her contract, was an unusual and special service which called her to go on a journey away from her place of employment and regular duties."

In the above case the services were not to be performed at the usual place of employment, but were in the nature of special services to be rendered at a distance from the usual place of employment.

See, also, *Mann* v. *Board of Education of City of Detroit*, 266 Mich 271; *Wilhelm* v. *Angell, Wilhelm & Shreve*, 252 Mich 648; *Clifton* v. *Kroger Grocery & Baking Co.*, 217 Mich 462; *Morse* v. *Port Huron & Detroit Railroad Co.*, 251 Mich 309; *Anderson* v. *Kroger Grocery & Baking Co.*, 326 Mich 429; *Bisdom* v. *Kerbrat*, 251 Mich 316; *Merriman* v. *Manning, Maxwell & Moore*, 251 Mich 318; *Papinaw* v. *Grand*

*Trunk Railway Company of Canada,* 189 Mich 441 (12 NCCA 243).

In the above group of cases the injury was compensable regardless of whether it occurred before the mission was accomplished or after and before the return to the usual place of employment.

The facts in the case at bar do not come within that class of cases where the employee is being transported by the employer to his place of work as in the *Konopka Case, supra.* Our problem is to determine whether the employee's fatal injury occurred while he was on the way to render or was returning from rendering special services, or performing a special mission for his employer, or whether this was an accident to an employee while going to or from his regular employment.

The commission found as a fact that:

"The deceased, as the defendant company's sales manager, had charge of both the new and used car sales. It was part of his work to have the used cars in condition for sale. It was within his authority to arrange for the work done by Nash that night. It was also his duty to revise the car list as requested by his employer."

This finding of facts is supported by the testimony of Walter D. Fitzhugh, deceased's employer, who testified as follows:

"*Q.* What was that work that you wanted him to do that evening?

"*A.* It was to go over our list of customers who had ordered automobiles, upon which he had taken deposits. He had his own way of keeping that list, which I didn't understand. You see, I had been sick, and had got to thinking about it, and I thought if anything happened to him, or he was on vacation or anything like that, I would sort of be up against it, and I asked him if he wouldn't get the list in shape so that I would know about it too, and he told me

he was coming down that evening and do that, or start at it.  \*  \*  \*

"Q. As sales manager he was permitted and did make calls from his house, and would travel? In other words, he didn't work any regular hours, wasn't as restricted to any particular hours to a day as a working man expects to be in your concern?

"A. No, sir.  \*  \*  \*

"A. Well, I feel that I was obligated about this accident to him; that he was coming down and doing work which I requested of him, although I didn't ask him to come down that evening particularly, but he came down, and did the work, for which he wasn't paid anything else, and naturally I felt obligated due to the fact that he came down there and did the work, a certain extent of it. He didn't complete it. \*  \*  \*

"Q. At the time of his death, or the time of his accident, Mr. Phillips was acting for you in the capacity of sales manager?

"A. Yes, sir, that was his title.  \*  \*  \*

"Q. During the month period from June 10th to July 3d, or the date of this accident, he was in complete charge insofar as the handing out of the cars —he was in charge of the list of the customers?

"A. Yes, sir, and then he ordered all the cars, and prepared the cars, according to what was to be installed, and insofar as the styles, colors, and so on and so forth, which we are only authorized to order so many, and then we didn't get them."

In the case at bar, deceased was sales manager of defendant company. His work was not restricted to any particular hours of the day. He had complete charge of the list of customers and was authorized to use the company car, not only for the business of his employer, but also for personal use. On the evening prior to the accident and injury, he was doing some work that his employer had previously requested, namely, bringing the list of customers up to date. We think decision in this case is in har-

mony with our decision in *Merriman* v. *Manning, Maxwell & Moore, supra,* and with *Reisinger-Siehler Co.* v. *Perry, supra,* and *Kyle* v. *Greene High School, supra.*

In the *Merriman Case* deceased had no fixed hours of employment. It was his duty to solicit business, prepare sales propositions and to visit plants where his employer had made installations. He also compiled bulletins, advertising, descriptive and photographic literature. Deceased was instructed by his superior to go to the company plant to secure certain information from Mr. Minty, another employee. While riding with Mr. Minty on their way to the plant, the automobile was struck by another automobile resulting in the death of plaintiff's decedent. We there affirmed an award for compensation upon the finding that decedent was doing a specific act within the scope of his employment which he was directed to do by his superior. The distinction in the above case and the case at bar is that in the *Merriman Case* the time for rendering the specific service was named and decedent was expressly directed to go to the plant for the purpose of getting material for the use of Mr. Minty, defendant's chief engineer. In the case at bar the time for rendering the specific service was not mentioned, but the specific service to be rendered was known both to decedent and his employer. In our opinion the service rendered by decedent was done on behalf and at the request of his employer. In such case his employment began when he left home to go to the office and continued until he returned to his home.

The award of the commission is sustained by the record and should be affirmed, with costs to plaintiffs.

BUSHNELL, J., concurred with SHARPE, J.

North, J.  The pertinent facts in the instant case are accurately stated in the opinion of Mr. Justice Sharpe, but I cannot agree with his conclusion as to the legal aspect of the case.  Instead I am of the opinion it conclusively appears from the uncontradicted facts that the injury to and the ultimate death of the employee, Roy Phillips, did not arise out of or in the course of his employment.  Without making reference to numerous Michigan decisions in accord herewith, it seems adequate to cite our comparatively recent decision in *Daniel* v. *Murray Corporation of America,* 326 Mich 1.  In that case the controlling aspect of the law applicable to the instant case was quite exhaustively considered; and as a matter of law in the light of the *Daniel Case* the commission's award of compensation to plaintiffs herein should be vacated and the proceedings dismissed, with costs to defendants.  The case is remanded for entry of an order denying compensation.

Reid, C. J., and Boyles, Dethmers, Butzel, and Carr, JJ., concurred with North, J.