GRAHAM *v.* SOMERVILLE CONSTRUCTION COMPANY.

1. WORKMEN'S COMPENSATION—JOB SUPERINTENDENT—FATAL ACCIDENT ARISING OUT OF AND IN COURSE OF EMPLOYMENT—PERFORMANCE OF DUTY FOR EMPLOYER.

   Job superintendent of pipe-line construction project may not be said to have suffered fatal accident arising out of or in course of his employment, where he was en route to his rooming house at 11 o'clock at night after having ascertained what repair parts were necessary to get ditch-digging machine in operation, eaten dinner with another employee who had accompanied him to the broken machine, spent about 4 hours in social recreation before starting for nearby village in employer's pickup truck, rooming house is not inferred to have been his headquarters and, at time of accident, he was not performing a duty for defendant employer (CL 1948, § 412.1).

2. SAME—PROXIMATE CAUSE.

   Workmen's compensation is not payable for an injury unless it arose out of and in the course of the employment (CL 1948, § 412.1).

3. SAME—ARISING OUT OF EMPLOYMENT.

   To arise "out of" the employment the injury sustained must have a causal connection with the work to be performed; must be one which follows as a natural incident to the employment, be connected with it, and not the result of a risk disassociated therefrom (CL 1948, § 412.1).

4. SAME—IN THE COURSE OF EMPLOYMENT.

   An injury is received "in the course of" employment, as that term is used in the workmen's compensation act, when it comes

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  58 Am Jur, Workmen's Compensation §§ 216–218.
[1]  Injury while on way to or from work sustained by employee who does not work regular hours or is subject to call.  142 ALR 885.
   Right to compensation for injury while going to or from work as affected by fact that compensation covers time involved or cost of transportation, or both.  87 ALR 250.
   Injury while riding to or from work in employer's conveyance.  10 ALR 169; 21 ALR 1223; 24 ALR 1233; 62 ALR 1438; 145 ALR 1033.
[2–5]  58 Am Jur, Workmen's Compensation §§ 210–212.

while the workman is doing the duty which he is employed to perform (CL 1948, § 412.1`.

5. SAME—PROXIMATE CAUSE.
   Under the test that an injury, to be compensable under the workmen's compensation act, must have arisen out of and in the course of the employment, an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment would not be compensable (CL 1948, § 412.1).

Appeal from Workmen's Compensation Commission. Submitted January 7, 1953. (Docket No. 33, Calendar No. 45,533.) Decided April 13, 1953. Rehearing denied June 8, 1953.

Kathleen Graham, widow of Ernest Graham, deceased, presented her claim for compensation against Somerville Construction Company, employer, and Michigan Mutual Liability Company, insurer, for death of decedent alleged to have occurred out of and in the course of employment. Award to plaintiff. Defendants appeal. Reversed.

*Laurence E. Barnett* and *Leo W. Hoffman,* for plaintiff.

*L. J. Carey* and *Geo. J. Cooper,* for defendants.

CARR, J. The material facts in this case are not in dispute. In July, 1950, the defendant Somerville Construction Company was engaged in the construction of a pipe line for the transmission of gas between Vermontville and Mulliken, a distance of approximately 10 miles. Defendant's employee, Ernest Graham, was in immediate charge of the work as job superintendent. A crew of between 35 and 40 men were employed in the laying of the pipe line, and equipment adapted to the necessary work to be done was used.

It was the duty of the superintendent to supervise the project, including the performance of the necessary labor and the operation of the machinery used in connection therewith. From the time that he came on the job shortly after July 4th to and including July 29th Graham roomed in Hastings, several miles distant from the location where the work was in progress. He was furnished a pickup truck by the employer for his use in performing his duties and for transportation between his rooming place and the site of the pipe line construction.

On the 29th of July, 1950, a ditch-digging machine used in necessary excavation broke down. Graham was advised of the fact and discussed with one of the employees on the job the necessity of obtaining the numbers of the parts of the machine that would require replacement. The employee in question, James Sutton, was living in Nashville. Pursuant to the arrangement made, Graham picked him up about 5:45 in the afternoon and the men drove to the place where the disabled machine had been in use. There the parts necessary to be replaced were examined and respective numbers taken for the purpose of enabling Graham to order new parts. The parties then returned to Nashville where Graham had dinner with Sutton and his wife.

During the evening Graham engaged in social recreation until shortly after 11 o'clock when he left, alone, for Hastings. He was at the time driving the pickup truck furnished him by his employer. While en route the truck left the road at a curve and Graham was killed, death being instantaneous or practically so. His widow, plaintiff herein, filed claim for compensation on behalf of herself and minor children, claiming that the accident arose out of and in the course of Graham's employment. A hearing was had before a deputy commissioner who found that the facts in the case did not support plaintiff's claim.

On appeal, the workmen's compensation commission reversed the holding of the deputy and made an award of compensation. On leave granted, the defendants have appealed, claiming in effect that there was no testimony tending to support the commission's finding.

As indicated, the compensation commission came to the conclusion that at the time of the accident Graham was acting within the scope of his employment and that such accident arose therefrom. Emphasis was placed on the nature of his duties and on his right to take Sutton with him from Nashville to the location of the work in progress, for the reason above indicated. For the purposes of the case it will be assumed that while on such mission, and while the parties were returning to Nashville, Graham was acting within the ambit of his employment. However, from the time that he reached the home of Sutton until he departed for Hastings some 3 or 4 hours later, it is obvious that he was not in the course of his employment, and no claim is made that he was. The argument advanced on this appeal is in substance that when he left Nashville to go to his rooming house in Hastings he did so as a part of his employment and in the course thereof, and that, in consequence, the fatal accident may be said to have arisen therefrom.

On behalf of plaintiff it is argued that Graham's rooming house was his headquarters and that it was his intention on returning there during the night of July 29th to order the necessary repair parts from a service plant or station maintained by the employer at Ada. The latter claim was considered by the commission and rejected as not a proper inference from the facts shown. In reaching such conclusion, it was said:

"Plaintiff attempts to show that her decedent was going to his rooming house in Hastings to make a telephone call to Ada for the necessary parts for the ditching machine so it could be repaired the following day. We are not impressed with that theory because if the deceased had wanted to order the parts that evening he could readily have done so by telephone from Nashville or have driven to his rooming house to telephone earlier in the evening. It is not reasonable to infer that he would wait until such a late hour when the office at Ada was probably closed to order the parts. The only reasonable inference from the facts is that he intended to order the parts on the following day."

We do not find in the record testimony that can be construed as supporting a conclusion that the rooming house at Hastings was in fact used by Graham as his headquarters. We do not understand from the opinion of the commission that it so found. The keeper of the rooming house, offered as a witness on behalf of plaintiff, testified that she had from 20 to 25 roomers, that Graham used the desk 'phone in making calls, that such calls were put through "collect," and that on one occasion a party calling for him while he was absent asked that she deliver a message requesting him to call a Grand Rapids operator. It does not appear to whom or for what specific purposes the calls by Graham over the rooming house telephone were made. Neither does it appear that any privileges were given to him not enjoyed by other roomers. Doubtless some calls of a business nature were made in the manner indicated, but such fact does not justify an inference that the rooming house was the headquarters of the work being carried on by defendant Somerville Construction Company. We think the testimony of plaintiff's witness Sutton, who worked

on the job, is significant. In describing what the superintendent did, he said:

"Well, he was on the job all day—that is, you know, as far as back and forth, past every little while."

It is a fair conclusion from the record that Graham's work of supervising the operation was done on the job. Its nature suggests that such must necessarily have been the case. There is no testimony in the record to support an inference or conclusion that the rooming house was, in any proper sense of the term, his headquarters.

The determination of the question involved in the case necessarily involves the interpretation of the provisions of the statute on which plaintiff's claim is based. CL 1948, § 412.1 (Stat Ann 1950 Rev § 17.151) provides in part:

"An employee, who receives a personal injury arising out of and in the course of his employment by an employer who is at the time of such injury subject to the provisions of this act, shall be paid compensation in the manner and to the extent hereinafter provided, or in case of his death resulting from such injuries such compensation shall be paid to his dependents as hereinafter defined."

The provision quoted has been considered by this Court in numerous decisions. In *Daniel* v. *Murray Corporation of America*, 326 Mich 1, 9, 10, the prevailing opinion quoted with approval from *McNicol's Case*, 215 Mass 497 (102 NE 697, LRA1916A, 306), as follows:

" 'In order that compensation may be due the injury must both arise out of and also be received in the course of the employment. Neither alone is enough.

" 'It is not easy nor necessary to the determination of the case at bar to give a comprehensive

definition of these words which shall accurately include all cases embraced within the act and with precision exclude those outside its terms. It is sufficient to say that an injury is received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform. It "arises out of" the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' "

The test suggested by the language of the Massachusetts court was recognized in *Pearce* v. *Michigan Home & Training School,* 231 Mich 536; *Appleford* v. *Kimmel,* 297 Mich 8; *Murphy* v. *Board of Education of the School District of the City of Flint,* 314 Mich 226, as well as in other decisions.

It has been repeatedly held that, as a general rule, an employee who is on his way to his home after completing his work at his place of employment is not within the course of such employment,

and that an accidental injury resulting from a traffic hazard, or other intervening cause, is not compensable. In *Morey* v. *City of Battle Creek*, 229 Mich 650 (38 ALR 1039), an award of compensation made for accidental death sustained under such circumstances was set aside. In *Murphy* v. *Board of Education of the School District of the City of Flint, supra,* it was held that a teacher who was injured on the street while going from the school where she was employed to her home was not entitled to compensation, notwithstanding testimony to the effect that she intended to look over papers and prepare examination questions at her home. Attention was called to the fact that the plaintiff was not at the time of her injury engaged in any specific mission for her employer, and that the main reason for her presence on the street was her desire to go home. A discussion of cases presenting so-called exceptions to the general rule and involving the performance of some errand or other specific duty for the employer is not required. In the case at bar there is no showing that the employee was so engaged or occupied at the time of his injury.

In *Daniel* v. *Murray Corporation of America, supra,* the plaintiff had finished his work for the day, had punched a time clock, and had crossed a public street to a parking lot maintained by the employer for the exclusive use of employees. While on the lot he slipped and fell, sustaining an injury. It was held that such injury did not arise out of and in the course of his employment since the employee had no further work or duties to perform for the employer on that day. It was also held that, under the provisions of the statute above quoted:

"To arise 'out of' the employment the injury sustained must have a causal connection with the work

to be performed; must be one which follows as a natural incident to the employment, be connected with it, and not the result of a risk disassociated therefrom (CL 1948, § 412.1)."—(Syllabus 2.)

"An injury is received 'in the course of' employment, as that term is used in the workmen's compensation act, when it comes while the workman is doing the duty which he is employed to perform (CL 1948, § 412.1)."—(Syllabus 3.)

"Under the test that an injury, to be compensable under the workmen's compensation act, must have arisen out of and in the course of the employment, an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment would not be compensable (CL 1948, § 412.1)."—(Syllabus 4.)

The holding in the *Daniel Case* has been followed in subsequent decisions among which are: *Hickman* v. *City of Detroit,* 326 Mich 547; *State Treasurer* v. *Kaiser-Frazer Corp.,* 326 Mich 715; *Pilgrim* v. *Menthen,* 327 Mich 714; *Campbell* v. *Secretary of State,* 335 Mich 237.

In *Phillips* v. *Fitzhugh Motor Co.,* 330 Mich 183, defendant's employee for whose accidental death an award of compensation was sought was acting as sales manager for his employer and also as manager of the parts department and in charge of used cars. He returned to his place of employment during the evening of his injury for the purpose of doing certain work there. Acting in his capacity as manager of the used-car department, he went to the home of an employee whose duties involved the preparing of cars for sale and procured such employee to accompany him for the purpose of doing work of the character indicated. The men quit their respective tasks at about midnight, and the manager returned

the other employee to his home. He then started for his own home but on the way was involved in a traffic accident that resulted in his death. Citing *Daniel* v. *Murray Corporation of America, supra,* it was held in the prevailing opinion of this Court, on appeal from an award of compensation, that the accident and injury to the employee did not arise out of and in the course of the employment. Compensation was accordingly denied.

The *Phillips Case* was followed in *Lyons* v. *Ford Motor Co.,* 330 Mich 684. There the employee of the defendant was the editor of a publication issued by 1 of the divisions of the defendant company. He had regular hours of duty but was frequently required to work overtime. He did not receive extra pay for such additional time, but was permitted to take time off from his regular period of work in order to equalize the hours of his employment. He was assigned a car from the garage of the defendant maintained at its Ypsilanti plant. On the 2d of June, 1948, he went to Detroit on matters connected with the duties of his employment. Returning to the Ypsilanti plant during the early evening, he then left to go to his home but met with a traffic accident resulting in his death. It was conceded that during the trip to Detroit and return to the Ypsilanti plant Lyons was in the course of his employment. This Court held, however, in accord with the *Daniel Case* and the *Phillips Case,* that at the time the accident happened the employee was performing no duty for his employer arising out of or in the course of his employment, and vacated an award of compensation made by the commission.

Under the statute, as interpreted by the foregoing decisions, the finding of the workmen's compensation commission in the instant case cannot be sustained. At the time of his injury, Graham was not engaged in performing any specific duty arising out of his

employment.   While going from Nashville to his rooming place, his home for the time being, he was not, under the undisputed facts in the case, within the course of his employment.   His mission in taking Sutton from Nashville to the location of the job, for the purpose stated, and in returning him to Nashville, ended at Sutton's home.   From that moment until the trip to Hastings was begun Graham was clearly not within the ambit of his employment.   He was engaged solely in recreational activities for his own enjoyment.   There is no testimony on which to base a conclusion that he was during such trip, prior to the accident, engaged in any work, or performing any duty, for his employer.   Whether he intended to order the necessary parts for the ditch-digging machine by telephone from Hastings on the following day, or to send in the order in some other manner or from some other point, does not appear.   He might, as the commission pointed out in its opinion, have telephoned such order from Nashville, but the record does not show whether or not he attempted to do so.   So far as this record shows his day's work had been completed early in the evening, and he was at the time of the accident on his way to his home.   That was his mission at the time of the accident.   The fact that he was driving a motor vehicle belonging to the employer does not alter the situation.

The case is remanded to the workmen's compensation commission with directions to vacate the award of compensation.   Defendants may have costs.

DETHMERS, C. J., and ADAMS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.