APPLEFORD v. KIMMEL.

1. WORKMEN'S COMPENSATION—ACCIDENT MUST ARISE OUT OF AND IN COURSE OF EMPLOYMENT.

To justify an award of workmen's compensation for an accidental injury the accident must have arisen "out of" and "in the course of" the employment and the two are separate questions to be determined by different tests (2 Comp. Laws 1929, § 8417).

2. SAME—ARISING OUT OF AND IN COURSE OF EMPLOYMENT—TESTS.

An accident arising out of an employment almost necessarily occurs in the course of it, but the converse does not follow, as "out of" points to the cause or source of the accident and "in the course of" relates to time, place and circumstances (2 Comp. Laws 1929, § 8417).

3. SAME—ACCIDENT IN THE COURSE OF EMPLOYMENT—PROXIMATE CAUSE.

An injury is received "in the course of" employment, as that term is used in the workmen's compensation act, when it comes while the workman is doing the duty which he is employed to perform and "arises out of" the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed, and the resulting injury (2 Comp. Laws 1929, § 8417).

4. SAME—ASSISTANT MANAGER OF THEATER—ASSAULT OFF PREMISES—ARISING OUT OF AND IN COURSE OF EMPLOYMENT.

Finding of department of labor and industry that injuries to assistant manager of theater received as the result of an assault while on his way home from the theater arose out of and in the course of his employment held, supported by evidence which showed, among other things, that assailants had been evicted from his theater on New Year's Eve for making a disturbance and on following May 28th had left the theater after plaintiff had called the police because they had again made a disturbance, where his duties included that of handling disturbances in the theater when discovered or reported to him

and assailants attacked him because, in the execution of his duties, he had ordered them to leave the theater (2 Comp. Laws 1929, § 8417).

Appeal from Department of Labor and Industry. Submitted January 8, 1941. (Docket No. 37, Calendar No. 41,339.) Decided March 11, 1941.·

Lawrence Appleford presented his claim against Louis Kimmel, doing business as Washington Theatre, employer, and State Accident Fund, insurer, for injuries arising out of his employment. From award to plaintiff, defendants appeal. Affirmed.

*Mason, Davidson & Mansfield (Walter A. Mansfield),* of counsel), for plaintiff.

*Harry F. Briggs (Roy Andrus,* of counsel), for defendant.

BUSHNELL, J.   Defendants appeal from an award by the department of labor and industry, requiring them to pay compensation for an accidental injury which plaintiff claims arose out of and was sustained by him in the course of his employment. Defendant Louis Kimmel owns and operates the Washington Theatre in Royal Oak, Michigan. Plaintiff Appleford had been employed by Kimmel for about 10 years prior to the accident, first as usher and during the last four years as an assistant manager. Appleford's duties as assistant manager required him to handle disturbances in the theater either when they were discovered by him or when they were reported to him by the ushers, and, if necessary, it was his duty to call the police.

On New Year's Eve, 1938, while the theater was crowded, several patrons who had been drinking were ordered by Appleford to leave the theater because of the disturbance they were creating. Upon their refusal to leave and before the police could be called, other patrons began to evict the disturbers. In the melee an usher shoved Peter Strachan, one of the disturbers, down the steps of the theater. Appleford at the time was six or eight feet away from Strachan.

On May 28, 1939, Strachan and some of the participants in the New Year's Eve disturbance again visited the theater and indulged in boisterous and offensive conduct. Appleford ordered them to leave the premises and, upon their refusal, called the police. The disturbers, anticipating the arrival of the police, left the theater, but lingered in the vicinity. After Appleford closed the theater he started for home and, within a few blocks, discovered that he was being followed. A group, including Strachan, stopped Appleford and demanded an apology for the ejection of Strachan on New Year's Eve. This was refused by Appleford. Strachan then struck at Appleford, who attempted to restrain him from delivering any blows, and held him until the police arrived. Appleford informed the police that, "These are the fellows that I called about from the theater." The events that followed are described by the department of labor and industry as follows:

"The plaintiff asked them for further protection, but the estimable guardians of the peace felt that they had fulfilled their obligation when they stopped the immediate altercation and advised the parties that they should take their fight out of town. The gang of rowdies evidently thought that the peace officers' suggestion was a splendid idea, for they immediately started to lead the plaintiff out of town

for the purpose of having their entertainment. They led the plaintiff by the arm, but after going about a block he gave additional resistance, and the said individual, who was scheduled as one of the principals, became very courageous and struck him from behind and fractured his jaw in four places.''

Plaintiff's claim for compensation, denied by the deputy commissioner, was allowed by the department with the finding that ''plaintiff's injury clearly arose out of and in the course of his employment.'' In support of this conclusion, the department said:

''His duties as assistant manager required him to handle disturbances arising in the theater. In the performance of those duties, he was subjected to the risk of incurring the displeasure of such rowdy elements as are herein involved. As a result of this risk he was subjected to injurious assault. The fact that he was assaulted on the street and not in the theater was merely happenstance and did not make the assault any the less incident to his employment. His accidental injury had its origin in a risk connected with his employment and developed from that source as a natural consequence.''

An order was entered requiring defendants to pay plaintiff compensation for total disability at the rate of $16.67 per week from May 28, 1939, to July 7, 1939, and for partial disability at the rate of $10 per week from July 7, 1939, to August 31, 1939. Defendants were also required to pay certain hospital and medical expenses incurred by plaintiff.

Defendants argue that plaintiff's injuries are not the result of an accident which arose out of and in the course of his employment. 2 Comp. Laws 1929, § 8417 (Stat. Ann. § 17.151).

In *Hopkins* v. *Michigan Sugar Co.,* 184 Mich. 87, 90, 91 (L. R. A. 1916A, 310), the court said:

"It is well settled that, to justify an award, the accident must have arisen 'out of' as well as 'in the course of' the employment, and the two are separate questions to be determined by different tests, for cases often arise where both requirements are not satisfied. An employee may suffer an accident while engaged at his work or in the course of his employment which in no sense is attributable to the nature of or risks involved in such employment, and therefore cannot be said to arise out of it. An accident arising out of an employment almost necessarily occurs in the course of it, but the converse does not follow. 1 Bradbury on Workmen's Compensation, p. 398. 'Out of' points to the cause or source of the accident, while 'in the course of' relates to time, place, and circumstances. *Fitzgerald* v. *Clarke & Son,* 2 K. B. (1908) p. 796."

In *Pearce* v. *Michigan Home & Training School,* 231 Mich. 536, the following rule laid down in *McNicol's Case,* 215 Mass. 497 (102 N. E. 697, L. R. A. 1916A, 306), was adopted:

" 'It is sufficient to say that an injury is received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform. It "arises out of" the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed, and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the work-

man would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' "

Where there is nothing to indicate the reason for the assault and no proof of any relationship between the injury and the employment, compensation has been denied. In the *Pearce Case,* the court held that the death of a laundress employed by a State institution did not occur in the course of her employment where she was murdered by one of the inmates on a public highway about a quarter of a mile away on a Saturday afternoon after she had finished work and was on her way to visit her children. See, also, *Slusher* v. *Pontiac Fire Department,* 284 Mich. 657.

In *Clark* v. *Clark,* 189 Mich. 652, claimant, a foreman, participated in an altercation with some teamsters who attempted to deliver some brick on the premises, the owner of the premises having previously directed claimant to prevent such delivery. Next day the teamsters returned with reinforcements and began another quarrel with the owner. Claimant, who came to the aid of the owner, was injured by a missile thrown by the attacking party while he was endeavoring to prevent interference on the part of the others. The court held the injury was not received in the course of his employment so as to entitle claimant to compensation. Decision in the *Clark Case* turned upon the fact that the activities of the claimant at the time of the assault

were outside the scope of his duties and that he apparently volunteered to come to the aid of his master when that was not within the scope of his employment. In the instant case plaintiff's assailants attacked him because, in the execution of the duties of his employment, he had ordered them from the theater.

No hard and fast rule can be laid down to cover all such situations. While it is generally held that injuries to an employee, incurred while going to and leaving the place of employment, are not compensable, exceptions arise because of the circumstances of the particular case. *Morey* v. *City of Battle Creek,* 229 Mich. 650 (38 A. L. R. 1039). See, also, *Kunze* v. *Detroit Shade Tree Co.,* 192 Mich. 435 (L. R. A. 1917A, 252) ; *Clifton* v. *Kroger Grocery & Baking Co.,* 217 Mich. 462; and *Simpson* v. *Lee & Cady,* 294 Mich. 460. See annotation of authorities on compensation for an assault arising out of and in the course of employment in 112 A. L. R. 1258 *et seq.*

The facts presented in this record sustain the finding of the department of labor and industry that plaintiff's injury arose out of and in the course of his employment. The award is affirmed, with costs to appellee.

SHARPE, C. J., and BOYLES, CHANDLER, NORTH, MCALLISTER, WIEST, and BUTZEL, JJ., concurred.