STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v ROE
(ON REHEARING)

Docket No. 186031. Submitted June 3, 1997, at Lansing. Decided October
31, 1997, at 9:25 A.M. Leave to appeal sought.

State Farm Mutual Automobile Insurance Company brought an action
in the Saginaw Circuit Court against Michael D. Roe, Wilbur D.
Roe, and Maureen Roe, seeking a declaration concerning State
Farm's duty under an automobile liability insurance policy to
defend and indemnify Wilbur and Maureen Roe against a negli-
gence action brought against them by Michael Roe. Michael Roe,
Wilbur and Maureen Roe's son, had lived with his parents and
worked for Wilbur Roe in a logging and sawmill business. It had
been Wilbur Roe's practice to offer to drive his employees to and
from job sites in an automobile owned by Wilbur and Maureen Roe
and insured by State Farm. In one of those drives home from a job
site, Michael Roe had sustained injury in a collision. The court,
Robert L. Kaczmarek, J., issued a declaratory judgment in favor of
the defendants, determining as not applicable an exclusion in the
policy providing: "THERE IS NO COVERAGE . . . FOR ANY BODILY INJURY TO
. . . ANY EMPLOYEE OF AN INSURED ARISING OUT OF HIS OR HER EMPLOYMENT.
This does not apply to a household employee who is not covered
or required to be covered under any worker's compensation insur-
ance." State Farm appealed. The Court of Appeals entered an order
reversing the trial court's order and opinion and remanding the
case for entry of a judgment in the plaintiff's favor. Subsequently,
the Court of Appeals granted a rehearing.

On rehearing, the Court of Appeals *held*:

1. The trial court erred in ruling that the policy exclusion did not
apply. "Arising out of his or her employment," as used in the insur-
ance policy exclusion, should be construed in the same way "aris-
ing out of and in the course of employment," as used in worker's
compensation law, is construed. Under worker's compensation law,
an accident arising out of transportation provided by an employer
is an accident that arises out of and in the course of employment.
Thus, because Michael Roe's injury arose out of transportation pro-
vided by his employer, the injury arose out of his employment and
coverage under the State Farm policy is excluded.

2. The State Farm policy exclusion is well within what is permitted by the financial responsibility act, MCL 257.201 *et seq.*; MSA 9.2201 *et seq.* Section 520(e) of the act, MCL 257.520(e); MSA 9.2220(e), provides that an automobile liability insurer may exclude "any liability under any workmen's compensation law" and "any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured."

3. A provision in the State Farm policy stating that "[y]ou and your spouse are covered for" injury to "A FELLOW EMPLOYEE WHILE ON THE JOB AND ARISING FROM THE MAINTENANCE OR USE OF A VEHICLE BY ANOTHER EMPLOYEE IN THE EMPLOYER'S BUSINESS" does not apply because Michael Roe's injuries were not caused by another employee, but by his employer.

4. The exception to the exclusion for household employees not covered or required to be covered for worker's compensation does not apply because Michael Roe was not a household employee and was required to be covered for worker's compensation.

5. No merit lies in the claim that coverage under the policy applies through Maureen Roe under the automobile owner's liability statute, MCL 257.401; MSA 9.2101, and because the insurable interests of Wilbur and Maureen are separate and distinct. The exclusion applies as long as the injured person is an employee of an insured; Michael Roe was an employee of Wilbur Roe.

6. A worker's compensation magistrate's decision to deny Michael Roe's claim for worker's compensation benefits on the ground that his injuries did not arise out of and in the course of employment is not binding on the Court of Appeals.

Reversed and remanded for entry of a judgment for State Farm.

MICHAEL J. KELLY, J., dissenting, stated that "arising out of his or her employment" should not be construed as being synonymous with "arising out of and in the course of employment" because the latter has two elements that are distinct and for which separate tests might be required. The omission of "in the course of employment" in the State Farm policy shows that State Farm intended only to disclaim liability for injuries arising directly from the circumstances and conditions of employment. Here, it cannot be said that Michael Roe's injuries in an automobile accident were peculiar to the work he performed in his family's logging and sawmill business. If it was State Farm's intent to disclaim liability for injuries covered by worker's compensation, it could have and should have made that clear.

INSURANCE — AUTOMOBILES — LIABILITY — PERSONAL INJURY — EXCLUSION FOR INJURY TO EMPLOYEES — EMPLOYER-PROVIDED TRANSPORTATION.

An exclusion in an employer's automobile liability insurance policy for bodily injury to an employee arising out of employment applies to an injury that arises out of and in the course of employment; an injury sustained while riding in the employer's automobile to or from work is an injury that arises out of employment.

*Smith & Brooker, P.C.* (by *Francis B. Drinan*), for State Farm Mutual Automobile Insurance Company.

*Patterson, Gruber, Kennedy, Gill & Milster* (by *Brian M. Kennedy*), for Michael D. Roe.

*Thomas E. Bock*, for Wilbur D. Roe and Maureen L. Roe.

ON REHEARING

Before: CORRIGAN, C.J., and MICHAEL J. KELLY and HOEKSTRA, JJ.

HOEKSTRA, J. Plaintiff appeals as of right an order granting judgment in favor of defendants in this action for a declaratory judgment. Plaintiff claimed that an exclusion in the automobile policy issued to defendants Wilbur and Maureen Roe relieved it of the duty to defend the Roes and pay damages on their behalf or indemnify them for the injuries suffered by their son, Michael Roe, in a vehicular accident. After entering an order reversing the trial court's order and opinion and remanding the case for entry of a judgment in plaintiff's favor, this Court granted a rehearing. We again reverse and remand for entry of a judgment in plaintiff's favor.

A

Wilbur operated a logging and sawmill business, W. D. Roe Lumber Company, a sole proprietorship, which involved cutting and milling lumber at various

sites around the state. Michael worked for his father and lived with his parents. Maureen, the wife of Wilbur and mother of Michael, was not an employee of W. D. Roe Lumber Company.

Wilbur paid his employees at varying hourly rates, but did not provide any benefits, although he provided transportation to and from the job sites for employees who wanted to ride with him. The employees did not pay for the gasoline used in transporting them. For several weeks before the accident, Wilbur and four employees, including Michael, worked at a job site that involved a drive of approximately one hour. As was his usual custom, Wilbur provided optional transportation to and from this job site to Michael and others.

On the day of the accident, Wilbur drove himself and his employees, including Michael, to the work site in an Oldsmobile that was titled in the names of both Wilbur and Maureen, insured by plaintiff under a no-fault policy, and primarily used by Maureen. While driving home from work, Wilbur was involved in a collision with another vehicle, causing extensive injuries to Michael. Plaintiff then paid statutory personal protection insurance benefits to Michael pursuant to the priorities set forth in MCL 500.3114(3); MSA 24.13114(3).

Eventually, Michael sued Wilbur and Maureen, claiming that his injuries were caused by negligent driving. In response, plaintiff brought this declaratory judgment action, claiming that the following exclusion in the liability section of the insurance policy relieved it of the duty to defend Wilbur and Maureen and pay damages on their behalf for the injuries suffered by Michael as a result of this accident:

There is no coverage under coverage a:

1. for any *bodily injury* to:

\*    \*    \*

B. any employee of an *insured* arising out of his or her
employment. This does not apply to a household employee
who is not covered or required to be covered under any
worker's compensation insurance.

Subsequently, pursuant to a consent judgment, the
parties agreed that Michael would have a judgment
against Wilbur and Maureen, jointly and severally, in
the amount of $100,000. The parties also agreed that
Michael would limit the recovery of this judgment to
the proceeds of plaintiff's automobile liability policy
issued to his parents, and plaintiff agreed to pay
Michael the amount of $100,000 in the event of an
adverse decision in its declaratory judgment action.
Following a bench trial, the trial court found that the
injury did not occur within the scope of Michael's
employment and that plaintiff had a duty to indemnify
Wilbur and Maureen. Thereafter, the trial court
denied plaintiff's motion for judgment notwithstand-
ing the verdict or a new trial.

B

On appeal, plaintiff argues that the trial court erred
in ruling that Michael's injuries did not arise out of his
employment, and, therefore, that the policy exclusion
did not apply. An insurance policy is much the same
as any other contract; it is an agreement between the
parties. *Auto-Owners Ins Co v Churchman*, 440 Mich
560, 566; 489 NW2d 431 (1992). When presented with
a dispute, a court must determine what the parties'
agreement is and enforce it. *Fragner v American
Community Mut Ins Co*, 199 Mich App 537, 542-543;

502 NW2d 350 (1993). Exclusionary clauses are to be strictly construed against the insurer. *Fire Ins Exchange v Diehl,* 450 Mich 678, 687; 545 NW2d 602 (1996). Exclusions limit the scope of coverage provided and are to be read with the insuring agreement and independently of every other exclusion. *Hawkeye-Security Ins Co v Vector Const Co,* 185 Mich App 369, 384; 460 NW2d 329 (1990).

Plaintiff argues that the "arising out of his or her employment" language of the exclusion should be construed in the same way as worker's compensation cases interpreting similar language found in the Worker's Disability Compensation Act. MCL 418.301 (1) and (3); MSA 17.237(301)(1) and (3) provide:

> (1) An employee, who receives a personal injury *arising out of and in the course of employment* by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act . . . .
>
> *     *     *
>
> (3) An employee going to or from his or her work, while on the premises where his work is to be performed, and within a reasonable time before and after his or her working hours, is presumed to be *in the course of his or her employment.* [Emphasis provided.]

In support of its position, plaintiff primarily relies upon *Konopka v Jackson Co Rd Comm,* 270 Mich 174; 258 NW 429 (1935), a worker's compensation case in which the Supreme Court held that the accident resulting in the death of a highway commission employee while he was being transported from his place of work to his home in a truck belonging to another employee arose out of and in the course of such employment and was compensable. In determin-

ing whether it was "an accident arising out of and in the course of his employment," the Court in *Konopka* held that if an accident arises out of transportation provided by the employer, it is an accident arising "in the course of the employment." *Id.* at 176-177. The test for determining whether transportation is employer-provided is whether, under the contract of employment and in light of all attendant circumstances, there is an express or implied undertaking by the employer to provide the transportation. *Id.*[1]

We agree with plaintiff that the exclusionary language "arising out of his or her employment" should

---

[1] See also *Chrysler v Blue Arrow Transport Lines*, 295 Mich 606, 608-609; 295 NW 331 (1940), where the Court followed *Konopka* in ruling that a fatal accident involving the plaintiff truckdriver, who had spent the weekend at home in Grand Rapids and was returning to Chicago to unload a truck, was compensable under the worker's compensation act as an accident arising out of and in the course of employment where his contract of employment contemplated free transportation by the defendant employer in one of the defendant's trucks to and from the home city; *Lemanski v Frimberger Co*, 31 Mich App 285; 187 NW2d 498 (1971), where this Court affirmed a finding by the Worker's Compensation Appeal Board that the injuries suffered by a journeyman sheet metal worker in an automobile accident while en route to the job site arose out of and in the course of his employment where the plaintiff was paid for travel to and from the job site under his employment contract; *Stark v L E Myers Co*, 58 Mich App 439, 442-443; 228 NW2d 411 (1975), where this Court, while recognizing the general rule that injuries sustained by employees going to or from work were not compensable under the worker's compensation act, cited *Chrysler, supra*, and *Lemanski, supra*, in observing that among the considerations in making the ultimate determination whether "an injury to an employee while on the way to work is sufficiently employment-related to be compensable" is "[w]hether employer paid for or furnished employee transportation"; *Torres v Armond Cassil Co*, 115 Mich App 690, 694; 321 NW2d 776 (1982), where this Court, quoting the considerations set forth in *Stark, supra*, reversed the appeal board's decision denying compensation for injuries suffered by the plaintiff in an automobile accident while being driven home from work because the plaintiff established that the employer furnished transportation; and, more recently, *Botke v Chippewa Co*, 210 Mich App 66, 69; 533 NW2d 7 (1995), citing *Stark*, in connection with the "dual-purpose exception" whereby travel to and from work is covered by the worker's compensation act.

be construed in a manner consistent with the worker's compensation act and *Konopka* for several reasons. First, the exclusionary language at issue is identical to that used in § 301 of the worker's compensation act. While the claimed exclusion does not specifically state that the language in question is to be interpreted in accordance with the worker's compensation act, we believe it apparent that the exclusion was crafted in consideration of worker's compensation law. As support for our conclusion, we note that the policy at issue also excludes coverage for obligations of an insured or his insurer under any type of worker's compensation, disability, or similar law.

Second, we believe that construing the exclusionary language in accordance with worker's compensation case law supports the policy considerations underlying the worker's compensation act. Generally, the right to recover benefits for personal injury or occupational disease under the worker's compensation act is the exclusive remedy of an employee against an employer who has complied with the act. MCL 418.131(1); MSA 17.237(131)(1); *Smith v Mirror Lite Co*, 196 Mich App 190, 192; 492 NW2d 744 (1992). If an employer fails to comply with the insurance requirements of the worker's compensation act, as Wilbur did,[2] it is liable in tort for injuries to

---

[2] Although Wilbur stated that he had carried worker's compensation insurance for a number of years, he apparently chose not to renew his coverage because his business was small and he was "winding it down." Given that Wilbur decided not to comply with his legal requirement as an employer, he should not be rewarded by having his no-fault insurer bear the costs of his decision to drop worker's compensation insurance. To find coverage under plaintiff's automobile policy for the injuries sustained by Michael would provide an incentive for other employers not to comply with their statutorily mandated obligation to carry worker's compensation insurance under MCL 418.611; MSA 17.237(611).

its employees. MCL 418.641(2); MSA 17.237(641)(2); *McGillis v Aida Engineering, Inc*, 161 Mich App 370, 372; 410 NW2d 817 (1987). Here, the exclusion in the insurance policy sought to prevent plaintiff from becoming a worker's compensation insurer and limit plaintiff's liability to only those risks properly assumed by an automobile insurer.

In light of the foregoing, we conclude that the exclusionary clause barred coverage for Michael's injuries because they arose out of his employment. Similar to *Konopka*, it was customary for Wilbur to furnish employee transportation to and from the job site, even though employees could provide their own transportation. As in *Konopka*, the manner of going to and from the job site was not compulsory, but it was "the general method" that Wilbur would provide the employees with transportation. Further, similar to *Konopka*, the transportation arrangement was for the "mutual advantage" of employer and employees because Wilbur was assured a full crew of workers each day to assist him in conducting the sawmilling operations and the employees received free transportation. Moreover, unlike in *Konopka*, the transportation here was provided in a vehicle owned and operated by the employer, and not merely another employee. Thus, although transportation was not expressly made part of the employment contract and employees were not paid for their travel time, transportation became "an essential incident of the employment as to be a part of it." *Id.* Given that there was "an expressed or implied undertaking by the employer to provide the transportation" in light of all the attendant circumstances, we believe that the exclusion applied because the injuries that Michael

sustained in the accident arose out of his employment. Because Michael's recovery under the terms of the consent judgment was limited to the proceeds of plaintiff's automobile policy and because plaintiff is not liable to indemnify Wilbur and Maureen, we reverse and remand for entry of a judgment in favor of plaintiff.

Contrary to defendants' claim, this case is not controlled by *Francis v Scheper*, 326 Mich 441; 40 NW2d 214 (1949). In *Francis*, our Supreme Court concluded that a phrase in an insurance policy excluding coverage for employees while "engaged in the employment . . . of the insured" did not apply because the employee who was injured while being transported home from work had ceased the day's productive work for which he was being paid. We believe the exclusion in this case, excepting coverage for injury "arising out of his or her employment" to be broader than the phrase "while engaged in the employment of the insured," used in *Francis*. As noted by our Supreme Court in *Nemeth v Michigan Building Components*, 390 Mich 734, 736; 213 NW2d 144 (1973), "the concept of course of employment is more comprehensive than the assigned work." Similarly, we find the phrase "arising out of his or her employment" refers to a course of employment that is more expansive than merely the assigned work and more comprehensive than "engaged in the employment of the insured," which under *Francis* refers only to the performance of assigned work that an employee is paid to do.

Defendants further contend that the exclusion is contrary to public policy because it is broader than that permitted by chapter five of the Vehicle Code,

the financial responsibility act, MCL 257.501 *et seq.*;
MSA 9.2201 *et seq.*, specifically § 520(b)(2), MCL
257.520(b)(2); MSA 9.2220(b)(2), which applies to all
liability insurance policies. As a matter of law, when
an automobile accident occurs in Michigan, the scope
of liability coverage is determined by the financial
responsibility act. *Farmers Ins Exchange v Anderson*,
206 Mich App 214, 217; 520 NW2d 686 (1994). Not-
withstanding, § 520(e), MCL 257.520(e); MSA 9.2220
(e), provides that an insurer may exclude "any liabil-
ity under any workmen's compensation law" and "any
liability on account of bodily injury to or death of an
employee of the insured while engaged in the employ-
ment, other than domestic, of the insured." Thus,
under this section, an insurer may exclude not only
all liabilities within the coverage of the worker's com-
pensation act, but also those arising from nondomes-
tic employment relationships even if they are not cov-
ered by the worker's compensation act. In this case,
we believe the exclusion to be well within what is
permitted by the statute and not contrary to public
policy.

Michael also argues that even if his injuries arose
out of his employment, the exclusion in § 1(a) of the
policy excepts Wilbur and Maureen from any course
or scope of employment exclusion by providing:

> A FELLOW EMPLOYEE WHILE ON THE JOB AND ARISING FROM THE
> MAINTENANCE OR USE OF A VEHICLE BY ANOTHER EMPLOYEE IN THE
> EMPLOYER'S BUSINESS. *You* and *your spouse* are covered for
> such injury to a fellow employee.

Here, Wilbur and Maureen are the referenced "you
and your spouse," and what they would be covered
for are, among other things, vehicular injuries to

Michael caused by "another employee," which must be a person other than themselves. Accordingly, this provision does not apply because Michael's injuries were not caused by another employee.

Michael further asserts that even if his injuries arose out of his employment, the sentence in the exclusion stating that "[t]his [exclusion] does not apply to a household employee who is not covered or required to be covered under any worker's compensation insurance" defeats the claimed exclusion because he was a member of the same household and was not covered under worker's compensation insurance. However, this exception to the exclusion is not applicable because Michael was not a household employee and was required to be covered under worker's compensation insurance.

There is likewise no merit to Michael's claim that the exclusion at issue does not apply to Maureen on the ground that she was liable to her son under the owners liability statute, MCL 257.401;  MSA 9.2101, because she was not his employer when she allowed Wilbur to drive the vehicle involved in the accident. However, because the car was titled in the names of both Wilbur and Maureen and covered under an insurance policy issued to both of them, the exclusion is applicable because Michael was an employee of "an insured," namely, Wilbur.

Likewise, there is no merit to Michael's claim that even if coverage did not apply to Wilbur, it would still apply to Maureen because plaintiff had a separate and distinct duty to cover each of the insureds individually. As plaintiff points out, defendants' reliance on *Shelby Mut Ins Co v United States Fire Ins Co*, 12 Mich App 145; 162 NW2d 676 (1968),  is misplaced

because there is nothing in the policy in question concerning the severability of the insureds' interests and because the exclusionary clause applies as long as the person seeking recovery is an employee of "an insured."

Finally, we note that even though the worker's disability compensation magistrate denied Michael's claim for compensation, finding that his injuries did not arise out of and in the course of his employment under § 301 of the worker's compensation act, this Court is not bound by the magistrate's ruling in determining whether the exclusionary clause in plaintiff's insurance policy is applicable in this action.[3] See *Integral Ins Co v Maersk Container Service Co, Inc*, 206 Mich App 325, 330; 520 NW2d 656 (1994).

Reversed and remanded for entry of judgment for plaintiff.

CORRIGAN, C.J., concurred.

MICHAEL J. KELLY, J. (*dissenting*). Because I believe that the trial court correctly interpreted the insurance contract, I respectfully dissent.

Ordinarily, this Court reviews a trial court's factual findings for clear error. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a def-

---

[3] Nonetheless, we believe that the magistrate's ruling was erroneous because the record shows that Wilbur furnished employee transportation. Although the magistrate sought to distinguish *Konopka* on the basis that the employment contract in this case did not provide for transportation, that it was "strictly voluntary on the part of the employees," and that "[i]n *Konopka*, the employees all gathered at the employer's place of business, from which they were conveyed to the job site," the purported distinctions miss their mark. In light of all the attendant circumstances, it is clear to us that here, as in *Konopka*, there was an implied undertaking by Wilbur to provide transportation.

inite and firm conviction that a mistake was made.
MCR 2.613; *Andrews v Pentwater Twp*, 222 Mich App
491, 493; 563 NW2d 713 (1997). In this case, the trial
court found that Michael Roe's injury "did not occur
within the scope of [his] employment" and "[t]hus the
plaintiff would have a duty to indemnify Wilbur and
Maureen Roe." I fully agree with this determination,
and I would not disturb it. When the language in the
parties' contract for insurance is examined in light of
existing case law, there is little basis upon which this
Court could be left with a *definite and firm* convic-
tion that the trial court was mistaken in granting judg-
ment for defendants.

Plaintiff has successfully convinced the majority
that the following contractual exclusion shields it
from its obligations to defendants, primarily "because
the exclusionary language . . . is identical to that used
in § 301 of the worker's compensation act":

> THERE IS NO COVERAGE UNDER COVERAGE A:
> 1. FOR ANY BODILY INJURY to:
>
> \*          \*          \*
>
>     B. ANY EMPLOYEE OF AN INSURED ARISING OUT OF HIS OR HER
>     EMPLOYMENT. This does not apply to a household employee
>     who is not covered or required to be covered under any
>     worker's compensation insurance.

When interpreting a contract of insurance, we con-
strue exclusionary clauses strictly against the insurer.
*Fire Ins Exchange v Diehl*, 450 Mich 678, 687; 545
NW2d 602 (1996). Moreover, we interpret exclusion-
ary clauses in isolation, reading them with the insur-
ing agreement and independently of every other
exclusion. *Hawkeye-Security Ins Co v Vector Const
Co*, 185 Mich App 369, 384; 460 NW2d 329 (1990).

The majority opinion, I think, dilutes these principles of construction.

The majority interprets the exclusionary language in a manner consistent with the worker's compensation act because it finds that the exclusion contains language "identical" to the worker's compensation law. This is plainly not so. The worker's compensation act covers injuries "arising out of and in the course of employment," MCL 418.301(1); MSA 17.237(301)(1), not just injuries "arising out of employment." By adding the phrase "and in the course of employment" into the exclusionary clause contained in the contract, the majority has reformed the contract. This is unfortunate, because this revisionary act completely ignores that our courts have treated the phrase "arising out of employment" differently from the phrase "in the course of employment" for the purposes of the worker's disability compensation law, and whether the two phrases require separate tests remains an open question under Michigan law. See *Simkins v General Motors Corp*, 453 Mich 703, 712-713, n 14, 724-725; 556 NW2d 839 (1997). Here, the insurer, a sophisticated business entity, purposefully chose not to employ the phrase "arising out of and in the course of employment," the words "generally used . . . to refer to the connection between the injury and employment," *id.*, and yet contends that it intended to disclaim liability for injuries compensable under the worker's compensation law. This purposeful omission of the phrase "in the course of employment" shows that plaintiff intended only to disclaim liability for injuries arising *directly* from the circumstances and conditions of employment:

"It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed, and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origins in a risk connected with the employment, and to have flowed from that source as a rational consequence." [*Appleford v Kimmel*, 297 Mich 8, 12-13; 296 NW 861 (1941), quoting *McNicol's Case*, 215 Mass 497; 102 NE 697 (1916); see also *Pearce v Michigan Home & Training School*, 231 Mich 536, 537-538; 204 NW 699 (1925). [1]]

By no stretch of the imagination can the injuries Michael Roe incurred in an automobile accident be considered "peculiar to the work" he performed at his family's logging and sawmill business. Therefore, his injuries cannot be said to have arisen from his

---

[1] The Supreme Court has found that *Whetro v Awkerman*, 383 Mich 235; 174 NW2d 783 (1970), a case in which that Court stated, "Michigan . . . no longer requires the establishment of a proximately causal connection between the employment and the injury to entitle a claimant to compensation," *id.* at 242, has no precedential effect. *Dean v Chrysler Corp*, 434 Mich 655, 660-661; 455 NW2d 699 (1990).

employment, although it may be fair to say that they arose from the more comprehensive "course" of his employment. See *Konopka v Jackson Co Rd Comm*, 270 Mich 174, 176-177; 258 NW 429 (1935).

Unlike the majority, I find the case of *Francis v Scheper*, 326 Mich 441; 40 NW2d 214 (1949), to be instructive. I believe that *Francis* is helpful not because the exclusionary language in the instant insurance contract tracks that of the exclusionary clause considered by the Supreme Court in *Francis*, which disclaimed liability for injuries incurred while the employee was "engaged in the employment . . . of the insured," *id.* at 445, but because the Supreme Court stated the following, which should be the lodestar here:

> The phrase, "engaged in the employment," can fairly be construed as meaning, active in the work plaintiff was employed and paid to do. *It was incumbent on defendant casualty company, who drafted the policy, in order to escape liability under the circumstances of this case, so to draft the policy as to make clear the extent of nonliability under the exclusion clause.* [*Id.* at 447-448 (emphasis added).]

In this case, if, as it argues, plaintiff intended to disclaim liability for injuries covered by the worker's compensation disability law, it could have and should have made that intent clear. At the very least, plaintiff should have used language that actually is identical or comparable to the language used in the worker's compensation law. Because it did not do so, I would hold the insurer to the definition of the phrase "arising out of employment" that prior case law sets forth. Further, it should be of no consequence that, in a separate provision, the insurance policy "also excludes

coverage for obligations of an insured or his insurer under any type of worker's compensation, disability, or similar law." After all, and as the majority correctly states, exclusionary clauses are to be read in isolation and independently of every other exclusion. *Hawkeye-Security, supra.* Lastly, I fail to see why this case has become a vehicle for advancing the policy considerations underlying the worker's compensation disability law. This case involves an inartfully drafted private contract between an insurer and an insured; it does not concern the employer's liability for disability payments. The majority states that the employer "should not be rewarded by having his no-fault insurer bear the costs of his decision to drop worker's compensation insurance." *Ante* at 265, n 2. I do not consider the employer's attempt to hold the insurer to the terms of the insurance contract and gain the benefits for which the employer bargained and paid as a quest for an unjustified "reward." Quite the contrary. The majority has rewarded the insurer's ineptitude at the expense of the blue-collar logger who paid for coverage.

In light of these considerations, I would affirm.