*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNITED ROAD LOGISTICS, LLC,

        Plaintiff/Garnishor-Appellee,

v

CCMI TRANSPORT, LLC,

        Defendant,

and

AGENCY INSURANCE COMPANY OF
MARYLAND, INC,

        Garnishee Defendant-Appellant.

UNPUBLISHED
January 19, 2023

No. 359344
Wayne Circuit Court
LC No. 18-007839-CB

Before: JANSEN, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

In this garnishment action, Garnishee Defendant, Agency Insurance Company of Maryland, Inc. ("Maryland") appeals as of right the trial court order granting summary disposition in plaintiff's favor. We affirm.

## I. BACKGROUND FACTS

Plaintiff is a broker that arranges for the transportation of vehicles all over the United States. CCMI Transport, LLC ("CCMI") is a carrier for such vehicles. On May 26, 2016, plaintiff and CCMI entered into a contract whereby CCMI would transport vehicles for plaintiff. Relevant to the instant matter, the contract provided that if a vehicle suffered damage while in CCMI's care, CCMI and/or its insurance companies would pay plaintiff, in full, "the retail value of the lost and/or damaged new motor vehicles less any salvage value, if any."

In 2016, CCMI picked up a brand-new Kia vehicle in Maryland for delivery to Pennsylvania. While the vehicle was in CCMI's custody and control, it was damaged. Although the total damages to the Kia would cost only an estimated $3885.82 to repair, Kia determined it

-1-

could not place the vehicle in service for safety reasons and the vehicle was thus a total loss. Kia had the vehicle destroyed on August 25, 2016.

Kia filed a claim with plaintiff for its losses sustained on the vehicle in the amount of $29,893.05, and plaintiff fulfilled its contractual obligation to Kia to pay the claim in full. Plaintiff thereafter informed CCMI that it would be seeking reimbursement from it pursuant to the parties' contract but CCMI refused to make the reimbursement. Plaintiff also sent Maryland, which had issued a motor truck cargo liability insurance policy to CCMI, a subrogation demand with respect to the Kia. Maryland responded that the policy it issued to CCMI only covered "direct physical loss" to covered property and, because plaintiff included in its subrogation demand an estimate for $3885.82 in damage to the Kia, Maryland considered the "direct physical loss" of the Kia to be only that amount. Maryland also noted that CCMI had a deductible of $1000, and it thus sent a payment to plaintiff for $2885.82.

Plaintiff responded to Maryland, explaining that due to the nature of the damages to the Kia, Kia Motors America was unable to certify it based upon safety concerns and, as a result, it could not enter the stream of commerce and be sold. Plaintiff advised that it had paid Kia for the total loss of the vehicle in the amount of $28,893.05. Plaintiff further advised Maryland that plaintiff's contract with CCMI required CCMI to indemnify and hold plaintiff harmless for the full loss of the vehicle under the circumstances that occurred and plaintiff thus demanded payment in full for the damages caused to the Kia in the amount of $28,893.05. Plaintiff further asked Maryland to contact it by a specific date and if it did not, plaintiff would assume Maryland had denied the claim and plaintiff would proceed with litigation. Maryland did not respond to plaintiff's subrogation demand, so, on July 11, 2018, plaintiff filed a breach of contract action against CCMI.

Plaintiff ultimately obtained a $33,227.01 default judgment against CCMI in the lawsuit. Thereafter, plaintiff filed a request and writ for garnishment, naming Maryland as garnishee under terms of the insurance policy Maryland had issued to CCMI. Maryland timely filed its garnishee disclosure, stating that it was not indebted to plaintiff for any amount. Plaintiff eventually moved for summary disposition in its favor citing MCR 3.101(M)(1) and MCR 2.116(C)(10). Maryland responded that its policy contained a requirement that a person seeking coverage under the policy must promptly notify Maryland about any lawsuit and send Maryland all legal papers related to the lawsuit. Maryland stated that neither CCMI nor plaintiff notified it of the July 2018 lawsuit plaintiff had filed against CCMI, or of the default entered in that lawsuit and that it first learned of the lawsuit when it was served with a writ of garnishment on April 5, 2019. According to Maryland, given its lack of notice, it was not given an opportunity to defend CCMI in the lawsuit and that its policy and MCL 257.520(f)(6) therefore both preclude Maryland's liability on the default judgment issued in plaintiff's lawsuit against CCMI. Maryland further argued that plaintiff did not comply with the court rule governing garnishments after judgment, MCR 3.101, and that any claim plaintiff might have against Maryland is barred by laches. The trial court determined that Maryland received sufficient notice of the lawsuit, plaintiff complied with MCR 3.101, laches was not applicable, and Maryland had suffered no prejudice as a result of the underlying lawsuit. It thus granted plaintiff's motion for summary disposition.

## II. LACK OF NOTICE

Maryland first argues on appeal that it having not received prompt notice of or a reasonable opportunity to appear in and defend CCMI before the default judgment was entered in the underlying lawsuit and having been prejudiced by the lack of notice, Maryland is not liable on the judgment in the underlying lawsuit. Maryland also asserts it is not liable on the judgment by operation of MCL 257.520(f)(6). We disagree.

This Court reviews de novo the grant or denial of summary disposition. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *St. Clair Med, PC v Borgiel*, 270 Mich App 260, 263–264; 715 NW2d 914 (2006). "The moving party must specifically identify the matters that it believes have no disputed factual issues" and "support its position with affidavits, depositions, admissions, or other documentary evidence." *Id.* at 264. A motion for summary disposition under MCR 2.116(C)(10) is properly granted when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10).

Provisions in liability insurance contracts requiring the insured to give the insurer immediate or prompt notice of a lawsuit are common. The Maryland policy issued to CCMI contained such a provision. The policy provides, in relevant part:

### DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, you or the person seeking coverage must promptly report each accident or loss even if you or the person seeking coverage is not at fault. Refer to your policy documents for the claims phone number.

\*\*\*

A person seeking coverage must:

1. cooperate with us in any matter concerning a claim or lawsuit;

2. provide any written proof of loss we may reasonably require;

3. allow us to take signed and recorded statements, including sworn statements and examinations under oath, which we may conduct outside the presence of you, a relative, or any person claiming coverage, and answer all reasonable questions we may ask as often as we may reasonably require;

4. promptly call us to notify us about any claim or lawsuit and send us any and all legal papers relating to any claim or lawsuit.

Maryland asserts that MCL 257.520(f)(6), part of the Michigan vehicle code, governs this matter and relieves it from liability due to a lack of notice of the underlying lawsuit. That provision provides:

> The insurance carrier shall not be liable on any judgment if it has not had prompt notice of and reasonable opportunity to appear in and defend the action in which such judgment was rendered, or if the judgment has been obtained through collusion between the judgment creditor and the insured.

However, Maryland also acknowledges that the policy it issued to CCMI was a cargo insurance policy, not a motor vehicle liability policy. Moreover, MCL 257.520(f)(6) is part of the Michigan financial-responsibility act. "As a matter of law, when an automobile accident occurs in Michigan, the scope of liability coverage is determined by the financial responsibility act." *State Farm Mut Auto Ins Co v Roe*, 226 Mich App 258, 268; 573 NW2d 628 (1997). The accident at issue did not occur in Michigan and CCMI is a Pennsylvania LLC. Maryland has thus not established that MCL 257.520(f)(6) is applicable. Our issue, then, is whether Maryland is liable on the default judgment entered against CCMI when CCMI, contrary to the language in its policy, failed to provide notice of or filings concerning the lawsuit to Maryland.

While Maryland states that the facts of the instant matter concerning notice are similar to those in *Kleit v Saad*, 153 Mich App 52, 56; 395 NW2d 8 (1985), in that case, the accident occurred in Michigan and the resolution of that matter turned on application of the Michigan financial-responsibility act, which we have already determined does not apply here. Maryland also relies upon *LeDuff v Auto Club Ins Ass'n*, 212 Mich App 13, 16; 536 NW2d 812 (1995). In that case, a plaintiff that was injured in an accident filed suit against both the owner and driver of the vehicle. The plaintiff obtained a default judgment against the defendants and thereafter filed a writ of garnishment against Auto Club as insurer of the vehicle. *Id*. at 15. In a garnishee disclosure, Auto Club admitted that a policy existed on the vehicle, but additionally stated that it was unknown whether the policy applied to any claim by the plaintiff. *Id*. In *LeDuff*, it appears that while plaintiff's insurer contacted Auto Club at some point inquiring about potential coverage, no claim was ever filed. This Court found that "[w]hile garnishee defendant may have been able to infer from the call that an accident had taken place, there was no indication that a claim or a lawsuit was planned," *Id*. at 17, and that the call(s) were "insufficient to mitigate the prejudice caused by the lack of timely notice. Delays in notification can prejudice an insurer when the insurer is prevented from investigating the accident." *Id*. This Court thus found that summary disposition was properly granted in favor of garnishee defendant, Auto Club. As in *Kleit*, resolution of *LeDuff* turned upon the Michigan financial-responsibility act, *Id*. at 16. Resolution also involved a lack of notice to Auto Club about the occurrence of the accident, or that a claim or lawsuit was planned, which prevented Auto Club from investigating the accident. *Id*. That is not the case here.

Contact logs prepared by Maryland indicate that on February 28, 2017, it received a subrogation demand concerning the KIA from plaintiff and that plaintiff was seeking the vehicle cost of $29,074, plus the costs of a survey, transportation, and destruction of the vehicle. Maryland thus opened a file on the matter and assigned the matter a claim number. In the contact log, it was stated that agent David Boone and another Maryland employee reviewed the insurance policy and that they agreed "that we would only owe the estimated damages to the KIA and nothing else, less the $1000 deductible." Boone entered a note in the log on February 28, 2017 stating that he called plaintiff and explained that Maryland's insurance policy only covered direct physical loss and that it would pay plaintiff $2885.82 "which is their estimate amount ($3885.82) less the motor truck cargo deductible ($1000)." Plaintiff asked Maryland to put its position in writing. The next note

to appear in the contact log quoted an e-mail that Maryland had received from plaintiff on January 8, 2018, asking if Maryland had ever opened the file back up to review it, as Maryland did not have all documents associated with the loss. Maryland senior claims specialist, Katy Hess, responded to plaintiff on behalf of Maryland that "This was reviewed by Dave Boone and we paid the amount of the estimate; we would not pay to total it as the estimate did not warrant the vehicle to be declared a total loss. We did not require any additional paperwork on this one."

On May 11, 2018, plaintiff sent a letter to Maryland, demanding payment in full for the damages caused to the Kia in the amount of $28,893.05 and specifically stated, "Please contact me by May 25, 2018, to make arrangements for payment. If I do not hear from you by this date, we will assume the claim is denied and will proceed with litigation to protect [plaintiff]'s interests." Thus, Maryland was well aware of the accident occurrence, assigned the matter a claim number, and was advised by plaintiff that if Maryland did not pay the amount it sought in full, it would initiate legal proceedings. Plaintiff did, in fact, initiate legal proceedings against CCMI on July 11, 2018.

It could be reasonably argued that Maryland received notice of the impending lawsuit, because it was made clear that Maryland's action in not paying the demanded amount in full would trigger litigation by plaintiff. While plaintiff did not notify Maryland when it actually filed suit against CCMI, Maryland has provided no law or other support for a suggestion that *plaintiff* somehow had a duty to advise Maryland of the lawsuit. The insurance policy issued to CCMI was a contract between CCMI and Maryland and the duty to provide notice under that contract provision rested on CCMI, not Maryland.

Moreover, mere failure by an insured to notify its insurer of a lawsuit will not cut off the insurer's liability under the policy absent a showing of prejudice by the insurer. *Koski v Allstate Ins Co*, 456 Mich 439, 444-445; 572 NW2d 636 (1998). "[A]n insurer who seeks to cut off responsibility on the ground that its insured did not comply with a contract provision requiring notice immediately or within a reasonable time must establish actual prejudice to its position." *Id*. In *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 448; 761 NW2d 846 (2008), this Court stated that "[a]n insurer suffers prejudice when the insured's delay in providing notice materially impairs the insurer's ability to contest its liability to the insured or the liability of the insured to a third party."

Assuming, without deciding, that Maryland did not receive sufficient notice of the lawsuit, it is critical to the question of prejudice that Maryland simply disputed the amount of the coverage its policy would provide. And, in its lower court pleadings, Maryland did not raise any issue with respect to the claimed damage to the vehicle. Instead, in its April 15, 2019 garnishee disclosure, Maryland checked the box for the statement "The garnishee is not indebted to the defendant for any amount and does not possess or control the defendant's property, money, etc. Reason:_____." Maryland did not fill in the blank after the word "Reason." Thereafter, plaintiff moved the trial court to compel Maryland to respond to the document requests it had served upon Maryland and Maryland responded to that motion. Maryland said nothing in its responsive briefs about coverage for the accident at issue or any failure to be notified of the underlying lawsuit. And in response to plaintiff's later motion for summary disposition, Maryland claimed a lack of notice of the lawsuit and an opportunity to defend, but identified no facts or defenses based on facts that it would have relied upon had it received notice of the lawsuit and

participated in it. Until plaintiff moved for summary disposition in the garnishment action, there was no assertion or supported claim of prejudice due to the lack of actual notice of the underlying lawsuit. Maryland has not established prejudice as a result of a lack of sufficient notice of the underlying lawsuit.

As previously indicated, Maryland was notified of the accident and plaintiff submitted a demand for subrogation to Maryland. Maryland engaged in at least some investigation, as a repair estimate was prepared for it on July 1, 2016 by Starsinic Appraisal Service. The estimate states that it was prepared for "Agency Insurance Company" in Baltimore, and identifies Maryland employee David Boone as the insurance adjuster. *Id*. Additionally, Maryland's log notes reveal that when plaintiff asked whether Maryland had reopened the file to review it, as Maryland "did not have all documents associated with the loss," Katy Hess responded that, "This was reviewed by Dave Boone and we paid the amount of the estimate; we would not pay to total it as the estimate did not warrant the vehicle to be declared a total loss. We did not require any additional paperwork on this one." Maryland, then, did not seek any other information concerning the accident, even when given the opportunity to do so, did not claim any defenses, admitted policy coverage, and paid part of the claim. In short, Maryland has not established that it was prejudiced due to a lack of sufficient notice of the underlying lawsuit. The trial court thus properly granted summary disposition in plaintiff's favor.

## III. MCR 3.101

Maryland next argues that the facts stated in its garnishee disclosure (i.e., its denial of liability) must be taken as true because plaintiff did not serve interrogatories or notice a deposition within the time allowed in MCR 3.101(L)(1). According to Maryland, plaintiff was thus not entitled to summary disposition. We disagree.

Subchapter 3.100 in the Michigan Court Rules governs debtor-creditor proceedings. We review de novo the interpretation and application of our court rules. *In re McCarrick/Lamoreaux*, 307 Mich App 436, 445; 861 NW2d 303 (2014).

Once a writ of garnishment is obtained by a garnishor, it must serve the writ on the garnishee within 182 days after the writ was issued. MCR 3.101(F)(1). There is no dispute that this occurred in the instant matter and a proof of service in the record shows that Maryland was served with the writ on April 1, 2019.

After being served with the writ, the garnishee must file a verified disclosure with the court (and serve it on the garnishor) within 14 days. MCR 3.101(H). "If not indebted to the defendant, the garnishee shall file a disclosure so indicating." MCR 3.101(H)(1)(b). Maryland filed an SCAO approved disclosure from on April 15, 2019, within the time prescribed. The form appears, in part as follows:

**SEE INSTRUCTIONS**

1. This disclosure is for a writ of garnishment issued on _____and received by garnishee on _____.

☐ a. The garnishee mailed or delivered a copy of the writ of garnishment to the defendant on _____

☐ b. The garnishee was unable to mail or deliver a copy of the writ of garnishment to the defendant.

☐ c. The garnishee will not withhold payments under the writ of garnishment. The writ of garnishment was served after the deadline date for service and the writ is invalid.

2. At the time of service of the writ:

**Nonperiodic Garnishments**

☐ a. The garnishee is not indebted to the defendant for any amount and does not possess or control the defendant's property, money, etc. Reason: _____

☐ b. The garnishee is indebted to the defendant for nonperiodic payments as follows:

_____

Description of property, money, negotiable instruments, etc. under garnishee's control Type of account, if applicable

The amount to be withheld is $ and does not exceed the amount stated in item 2 of the writ.

As indicated by plaintiff, Maryland checked box 2a. but left the "Reason" portion blank.

MCR 3.101(L)(1) states, "(1)Within 14 days after service of the disclosure, the plaintiff may serve the garnishee with written interrogatories or notice the deposition of the garnishee. The answers to the interrogatories or the deposition testimony becomes part of the disclosure." MCR 3.101(M) then provides, in relevant part:

(M) Determination of Garnishee's Liability.

(1) If there is a dispute regarding the garnishee's liability or if another person claims an interest in the garnishee's property or obligation, the issue shall be tried in the same manner as other civil actions.

(2) The verified statement acts as the plaintiff's complaint against the garnishee, and the disclosure serves as the answer. The facts stated in the disclosure must be accepted as true unless the plaintiff has served interrogatories or noticed a deposition within the time allowed by subrule (L)(1) or another party has filed a pleading or motion denying the accuracy of the disclosure. Except as the facts stated in the verified statement are admitted by the disclosure, they are denied. Admissions have the effect of admissions in responsive pleadings. The defendant and other claimants added under subrule (L)(2) may plead their claims and defenses as in other civil actions. The garnishee's liability to the plaintiff shall be tried on the issues thus framed.

(3) Even if the amount of the garnishee's liability is disputed, the plaintiff may move for judgment against the garnishee to the extent of the admissions in the

-7-

disclosure. The general motion practice rules govern notice (including notice to the garnishee and the defendant) and hearing on the motion.

At the hearing on plaintiff's motion for summary disposition, Maryland's counsel acknowledged that plaintiff sent it a notice of taking deposition. No proof of service is in the record for the notice, and it is not clear from the statements by counsel when the notice of deposition was sent. In its appeal brief, Maryland appears to claim that plaintiff did not *take* a deposition within the 14-day period set forth in MCR 3.101(L)(1). But, that rule only provides that a plaintiff may *notice* the deposition of the garnishee within 14 days after service of the disclosure—not take the deposition. Thus, if the notice of taking deposition was sent to Maryland within 14 days of plaintiff receiving Maryland's garnishee disclosure, Maryland's assertion that the application of MCR 3.101(M)(2) requires that Maryland's denial of indebtedness must be taken as true is without merit. If the notice of taking deposition was not sent within the 14-day period, however, then we must determine whether Maryland's checking the box on its garnishee disclosure to indicate it denied indebtedness serves as a "fact" stated in the disclosure that must be accepted as true. We find that it does not.

In *Decker v Trux R Us, Inc*, 307 Mich App 472; 861 NW2d 59 (2014) the plaintiffs filed a lawsuit against Trux R Us arising out of injuries one of the plaintiffs suffered at a construction site when he was run over by a bulldozer. *Id*. at 474. Plaintiffs and Trux R Us ultimately entered into a consent judgment and plaintiffs agreed that rather than execute on the judgment against the assets of TRux R Us, they would instead seek insurance proceeds from a policy issued by Auto–Owners to Trux R Us. *Id*. at 474-475.

The plaintiffs thereafter filed a request and writ for garnishment, naming Auto–Owners as the garnishee. Auto–Owners filed a garnishee disclosure, indicating it was not indebted, and providing four reasons why it was not. *Id*. at 475. Six weeks later, Auto–Owners moved for summary disposition, contending that because the plaintiffs had not served them with interrogatories or a notice of deposition within 14 days, as set forth in MCR 3.101(L)(1), the statements in its garnishee disclosure denying indebtedness for the four stated reasons must be taken as true under MCR 3.101(M)(2) and that it was thus entitled to summary disposition. *Id*. at 475. The trial court agreed and, on appeal, this Court affirmed. We stated,

> on February 21, 2013, Auto–Owners filed its garnishee disclosure. Plaintiffs then had the option of how to proceed. They could have pursued discovery, but did not. Under MCR 3.101(L)(1), "the plaintiff may serve the garnishee with written interrogatories or notice the deposition of the garnishee." Here, plaintiffs failed to serve Auto–Owners with written interrogatories or notice of depositions. Thus, under MCR 3.101(M)(2), "[t]he facts stated in the disclosure must be accepted as true unless the plaintiff has served interrogatories or noticed a deposition within the time allowed by subrule (L)(1)...."
>
> . . . The plain language of MCR 3.101(L) and (M) commands that when a plaintiff fails to request discovery, the statements in the garnishee disclosure "*must be*" accepted as true. (Emphasis added.) [*Id*. at 479-480]

This Court dismissed the plaintiffs' argument that the garnishee disclosure provided only erroneous legal conclusions, rather than factual statements, as not true, because in the garnishee disclosure, Auto–Owners specifically alleged the following:

> Garnishee is not indebted to the Defendant for any amount and does not possess or control Defendant's property for the reasons that: (1) the insurance policy issued to Trux R Us excludes coverage for injuries to Decker because he was an employee and injured in the course of his employment; (2) the insurance policy provides no coverage because Trux R Us violated the conditions section of the policy which prohibits settlement (consent judgment) without the written agreement of the insurer; (3) the question of coverage was previously litigated between Trux R Us and Auto–Owners and judgment was entered in favor of Auto–Owners with a finding of no coverage and, because Plaintiffs stand in the shoes of Trux R Us for purposes of the garnishment, Plaintiffs are also precluded from proceeding under doctrines of res judicata and collateral estoppel; and (garnishee and or debtor are precluded from proceeding under the doctrine of laches[ ) ]. [*Id*. at 482]

This Court thus found that Auto–Owners did offer factual allegations, namely, that under the facts of the case, the insurance policy excluded coverage and that the prior litigation foreclosed garnishment. We found that these facts must be accepted as true under the plain language of MCR 3.101(M)(2) and that Auto–Owners was thus entitled to summary disposition. *Id*.

Similarly, in *Alyas v Illinois Employers Ins of Wausau*, 208 Mich App 324; 527 NW2d 548 (1995), a consent judgment was entered into between a plaintiff and a defendant after the plaintiff was injured at the defendant establishment. The plaintiff thereafter filed a writ of garnishment against the establishment's excess liability insurer, Wausau. *Id*. at 325-326. Wausau filed a garnishee disclosure and an answer that denied all liability "on several grounds." *Id*. at 326. Wausau moved for summary disposition in its favor, contending that because the plaintiff did not serve interrogatories or notice a deposition within 14 days after receiving the garnishee disclosure, the facts stated in its disclosure must be deemed true. *Id*. The trial court agreed and this Court affirmed on appeal. This Court stated:

> We agree with [Wausau] that summary disposition was properly granted. MCR 3.101(M)(2) provides that facts stated in a garnishment disclosure must be accepted as true unless the plaintiff has served interrogatories or a notice of deposition within the time allowed . . . It is undisputed that in the case at bar plaintiff failed to do so within fourteen days. Accordingly, under subrule M(2), the trial court was required to accept as true the facts stated in Wausau's garnishment disclosure. That disclosure stated that there was no liability inasmuch as no monies were owed under any policy of insurance by Wausau to the principal defendant. Because that fact must be accepted as true, summary disposition in favor of Wausau was appropriate. [*Id*. at 326-327]

As can be seen in the above cases, this Court is not hesitant to affirm summary disposition rulings in a garnishee's favor when the garnishor does not serve interrogatories or a notice of deposition upon the garnishee within 14 days. However, critical to the above cases is that the garnishees denied indebtedness for specifically stated reasons. Maryland does not contend, and

we find no support for the position, that a basic "check the box" denial of indebtedness, without setting forth any reason for the denial, is a sufficient statement of fact that must be deemed as true when a garnishor does not serve interrogatories or a notice of deposition upon the garnishee within 14 days. Maryland's claim otherwise is without merit.

## IV. LACHES

Maryland lastly claims that laches applies here because Maryland is unable to locate CCMI to determine whether CCMI had a viable defense to plaintiff's lawsuit. In addition, Maryland provided responses to plaintiff's request for production of documents in April 2019 and plaintiff did nothing after that until it filed its motion for summary disposition in August 2021, establishing both a lack of diligence on plaintiff' part and prejudice to Maryland.

We review de novo a trial court's decision concerning whether equitable doctrines such as laches apply. *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013). But the findings of fact supporting an equitable decision are reviewed for clear error. *Tenneco Inc*, 281 Mich App at 444.

As explained in *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 589; 939 NW2d 705 (2019):

> Estoppel by laches is the failure to do something which should be done under the circumstances or the failure to claim or enforce a right at a proper time. To successfully assert laches as an affirmative defense, a defendant must demonstrate prejudice occasioned by the delay. Typically, [l]aches is an equitable tool used to provide a remedy for the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert. A party guilty of laches is estopped from asserting a right it could have and should have asserted earlier. [Quotation marks and citations omitted; alteration in original.]

"This doctrine applies to cases in which there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 252; 704 NW2d 117 (2005) (quotation marks and citation omitted).

First and foremost, Maryland has provided no law or authority for its position that laches applies when a party waits a lengthy amount of time after receiving discovery responses to move for summary disposition. That alone is sufficient to deny Maryland relief based upon laches, as "[i]t is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted).

Moreover, plaintiff served the writ of garnishment on Maryland on March 27, 2019. Maryland filed its garnishee disclosure on April 15, 2019. After receiving answers to its request for production of documents that it deemed inadequate, on August 30, 2019 plaintiff moved to compel appropriate responses. A stipulated order granting the motion in part and denying it in part was entered September 20, 2019. While nothing next appears on the record until plaintiff

moved for summary disposition on August 13, 2021, we cannot ignore that most of 2019-2021 was clouded by covid restrictions.

In addition, as required when asserting a lack of notice of a lawsuit, Maryland must establish prejudice from a delay in order to assert laches. Maryland asserts that it was prejudiced by plaintiff's lack of diligence in moving for summary disposition because Maryland has been unable to locate CCMI and is thus unable to ascertain whether CCMI had any defenses to the underlying lawsuit. This argument fails for two reasons.

First, plaintiff was also unable to locate CCMI and had to obtain an order for alternate service in the underlying lawsuit. The writ of garnishment served on Maryland contains a case number for the underlying lawsuit. Maryland was made aware, through the writ of garnishment, that plaintiff had obtained a judgment against Maryland's insured and it would behoove them to determine the basis for the judgment. Had it done so, it could have seen the attempts plaintiff made at service on CCMI and could have undertaken other means and methods to try to contact CCMI itself.

Second, a garnishee-defendant is generally barred from challenging the validity of the judgment entered in the original action. *In re Smith Estate*, 226 Mich App 285, 288; 574 NW2d 388 (1997). "However, an insurer may raise an exclusionary clause as a defense in a garnishment proceeding if that issue has been preserved." *Id.* "[D]efenses raised in an initial letter denying coverage are preserved and may be raised in a later garnishment action." *Id.* at 289. The only defense raised by Maryland when corresponding with plaintiff was that its policy only allowed for the payment of the actual damages to the Kia, not the total loss. And it paid that amount to plaintiff. It was not until it was served with the writ of garnishment and filed its garnishee disclosure that Maryland sent a letter to CCMI (at its last known address presumably) denying coverage for the accident due to CCMI's failure to notify Maryland of the underlying lawsuit. Thus, the only defense Maryland preserved that "may be raised in a later garnishment action," *In Re Smith Estate,* 226 Mich App at 289, is that its policy allowed for payment of only part of the claimed loss. Being able to locate CCMI would not change the language in its policy or permit it to raise new defenses on behalf of CCMI in the garnishment proceeding that it had not previously preserved. Because Maryland is unable to establish that laches even applies to a party's alleged failure to timely move for summary disposition, let alone that Maryland was prejudiced by the alleged failure, laches does not apply.

Affirmed.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael F. Gadola

-11-